United States District Court
Eastern District of Michigan
Southern Division

| | |
|---|---|
| United States of America, | Criminal No. 17-20183 |
| Plaintiff, | Hon. Mark A. Goldsmith |
| v. | |
| D-5 Harold Lashawn Nero, | |
| Defendant. | |

**Government's Response to Defendant's Motion
for Revocation of Detention Order (R. 174)**

Harold Lashawn Nero is a career criminal with a string of arrests, convictions, and probation violations on drug and violent crimes stretching back decades. He is now indicted on seven sex trafficking charges and two drug charges—which each trigger presumptions of detention. Mr. Nero faces long mandatory sentences for his crimes at the Victory Inn. He is a proven danger and serial violator of supervision.

This Court should deny Mr. Nero's motion for bond.

Respectfully submitted,

Daniel L. Lemisch
Acting United States Attorney

*/s Jerome F. Gorgon*
Jerome F. Gorgon
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9676
jerome.gorgon@usdoj.gov

Date: January 2, 2018

1

## **Government's Brief in Support of its Response**

## **Issue Presented**

Should this Court grant bond to a serial criminal with a history of violence and drug dealing—including while on supervision—who is now indicted in a nine-count sex trafficking and drug conspiracy with presumptions of detention?

## I.     Statement of Facts

The government relies on several items which were previously provided to the Court at the April 6, 2017 bond hearing of codefendant Janette Gaggo Tawfik: (1) video clips from the Victory Inn's surveillance system, (2) the government's pole camera video, and (3) 13 independent victim and witness statements. (R. 48: Opinion and Order Denying Defendant's Request for Pretrial Release; 04/06/2017 Minute Entry). In additional support of Mr. Nero's detention, the government relies on: (4) the pretrial services report recommending detention, (5) Mr. Nero's criminal history, and (6) information from the US Marshals. From these sources, the government describes the following facts.

### A.     The Initial Investigation and Surveillance

The federal investigation began in September 2016, when an emergency room human trafficking and heroin overdose victim ("Victim 1") told federal agents from the Department of Homeland Security ("HIS") about a conspiracy that was selling women and drugs at the Victory Inn hotel on Michigan Avenue, in Detroit. (R. 48 Order at Pg ID 140). Victim 1 stated that she had swallowed the drugs to avoid detection on the orders of a pimp named "Tone," an alias of co-defendant Darrick Bell. *Id*. Bell is a convicted murderer and drug dealer, with several firearms convictions. *Id*. Bell worked hand-in-hand with Mr. Nero, who was an enforcer and drug distributor for Bell.

In subsequent interviews, Victim 1 confirmed that Bell is the leader of the conspiracy, that he uses drugs to coerce the human trafficking victims, and that she was terrified of his physical assaults. *Id*. Victim 1 said that the Victory Inn staff was part of the conspiracy and would direct sex dates to certain rooms. *Id*.

Another human trafficking victim ("Victim 2") described an extensive drug and human trafficking operation headed by Bell, where she and other women had been held against their will for several weeks. *Id*. at Pg ID 140-41. Victim 2 stated that the conspiracy forced women to commit sex acts for money in exchange for a room at Victory Inn for drugs to support their addictions. *Id*. at Pg ID 141. Victim 2 said that the Victory Inn staff was complicit in the criminal activity and that they only use a handful of rooms at the hotel for legitimate customers. *Id*.

On November 3, 2016, Detroit Police and Detroit EMS responded to a female drug overdose victim ("Victim 3") in room 118 at the Victory Inn. *Id*. While assessing Victim 3, Detroit Police talked to co-defendant Terry "T" Pruitt at the door of room 118. *Id*. On a Detroit Police bodycam video, Pruitt casually discusses the fact that he can procure prostitutes for customers. *Id*.

On November 4, 2016, Detroit police spoke to a female victim ("Victim 4") at a gas station near the Victory Inn. *Id*. Victim 4 stated that she was a prostitute who lived at the Victory Inn, and that Bell frequently delivered drugs to the hotel. *Id*. A few days later, HSI installed a nearby pole camera to conduct surveillance on the

Victory Inn. *Id*. On November 23, 2016, a reliable confidential informant told police that multiple drug dealers were working out of the Victory Inn. *Id*.

In early December, HSI and Detroit Police began conducting surveillance at the Victory Inn. *Id*. They observed dozens of apparent hand-to-hand drug deals and commercial sex dates in several different rooms. *Id*. The police performed traffic stops on several customers who left after short stays. *Id*. One customer admitted that she had just purchased $30 worth of crack cocaine from the Victory Inn, that she had been buying crack cocaine for the past several months from various individuals at the Victory Inn, and that "lots" of "girls" work as prostitutes at their to support their drug habits. Another customer had crack cocaine he just bought at the Victory Inn. He said that he had been buying crack cocaine for the past three months at the hotel, and that any prostitute on Michigan Avenue would tell you to get drugs "at the Victory Inn."

On December 26, 2016, Dearborn Police responded to a drug overdose call for a woman at the Best Value Inn hotel in Dearborn, Michigan, which is a few blocks from the Victory Inn. *Id*. at Pg ID 142. The female victim ("Victim 7") died at the scene. *Id*. Victim 7's boyfriend stated that she had ingested drugs that they purchased that day at the Victory Inn. *Id*.

On December 29, 2016, another reliable confidential informant told police that multiple people are selling drugs and "pimping" girls at the Victory Inn. *Id*.

### B. The January 2017 Search Warrant

On January 12, 2017 at 6:00 a.m., HSI and local police executed a Federal search warrant for 25 rooms at the Victory Inn. *Id*. During the execution, agents rescued 14 lethargic female human trafficking victims who were suffering from drug withdrawal in disheveled rooms. *Id*. They arrested co-defendant Michael "Man" Randol after he tossed 35 grams of crack cocaine from a room window. *Id*. at Pg ID 142-43. Agents also recovered one loaded firearm, narcotics, paraphernalia, and dozens of cell phones. *Id*. Most of the hotel rooms contained extensive evidence of recent drug use (used needles, used baggies, etc.). *Id*. Agents also seized the Victory Inn's encrypted video surveillance data from the hotel's cameras, and records including thousands of handwritten room receipts. *Id*. at Pg ID 143.

After rescuing the human trafficking victims from the Victory Inn, agents were able to interview some of them who confirmed that Bell and the other co-defendants, controlled, directed, and participated in the drug distribution and commercial sex at the Victory Inn. *Id*. More than one victim stated that Mr. Nero abused them, would hit the girls to keep them "in check," and even guarded them like prisoners while they walked to prostitute themselves on Michigan Avenue.

### C. The Evidence from the Victory Inn

Preliminary review of the pole camera video and pictures shows a massive volume of apparent hand-to-hand drug and commercial sex transactions from almost every Victory Inn room across a period of two months. *Id*.

6

Agents also recovered approximately 14,300 hours of encrypted video—the equivalent of more than 1 year and 7 months from the Victory Inn's 13 surveillance cameras. *Id*. at Pg ID 144. At the time of the April 6, 2017 hearing, agents had been able to review of 66 hours (about 0.04%) of the video, which show hundreds of drug transactions, widespread prostitution, violence, and members of the conspiracy. *Id*. Eleven video clips from this initial sample reveal drug transactions, human trafficking victims, and drug use (including at least one apparent overdose that lasted a considerable amount of time yet went unaddressed). *Id*. Mr. Nero is visible participating in both activities and walks past the overdosing woman.

Several clips from January 2, 2016 and January 3, 2016, from an internal hallway show violence, drug dealing, and human trafficking victims. In the clips which have been shown to the Court in the April 6, 2017 hearing, Mr. Nero directs drug traffic, drug customers crowd the hallway, hand-to-hand deals take place, a woman appears to overdoses, and a man strikes a human trafficking victim in the back of her head as they walk in the hall.

**D.    Nero's Post-Indictment Concealment**

On March 29, 2017, federal grand jury indicted Mr. Nero and issued a warrant for his arrest. (R. 17: Indictment).

According to the US Marshals, they conducted numerous interviews and surveillance operations when the case was assigned to the Detroit Fugitive

7

Apprehension Team (DFAT). (Ex 1: US Marshal's June 28, 2017 Report). DFAT's investigation showed that Mr. Nero was residing in the Detroit area and that he was receiving assistance from his friends and family to conceal his whereabouts. *Id*. The Marshals interviewed known associates of Mr. Nero who all denied knowing his whereabouts. *Id*. But the Marshals determined that the associate's statements were false because Mr. Nero had been sighted in the area of his associates within days of the interviews conducted by DFAT officers. *Id*.

On June 28, 2017, DFAT learned that Mr. Nero was hiding at 9781 Petoskey in Detroit. *Id*. Upon arrival at that location, a subject matching Mr. Nero's physical characteristics exited the location and was attempting to conceal his face by utilizing his hands, wearing a hooded shirt, and sunglasses. *Id*. Mr. Nero walked from the location between houses, and avoiding walking directly on the street as he left the area. *Id*. DFAT maintained visual surveillance on Mr. Nero and arrested him near and intersection. *Id*.

## II.     Argument

### A.     There is a Presumption Against Releasing Nero

"When a 'judicial officer finds that there is probable cause to believe' that a defendant committed one of the crimes listed in section 3142(e)(3), there is a presumption in favor of detention: 'Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]'" *United*

8

*States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)(3)). "A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). "Section 3142(e)(3)'s presumption in favor of detention imposes only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.'" *Stone*, 608 F.3d at 945 (citations omitted). "Although a defendant's burden of production 'is not heavy,' he must introduce at least some evidence." *Id*.

"Even when a defendant satisfies his burden of production, however, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id*. (citations and quotations omitted). "The presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id*. "To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'" *Id*. at 946.

The grand jury found probable cause and indicted Mr. Nero for seven sex trafficking crimes (Counts 1, 3, 4, 5, 6, 7, and 9). (R. 98: Superseding Indictment). Each of these is an offense under Chapter 77 of Title 18, United States Code, with a maximum term of imprisonment of 20 years or more. (R. 143: Acknowledgment of Superseding Indictment). Each triggers a rebuttable presumption in favor of detention. *See* 18 U.S.C. 3142(e)(3)(D).

9

The grand jury did the same for Mr. Nero's controlled substance crimes (Counts 11 and 18). (R. 98: Superseding Indictment). Both of these have a maximum term of 10 years or more. (R. 143: Acknowledgment of Superseding Indictment). These counts carry their own separate presumption. *See* 18 U.S.C. 3142(e)(3)(A).

After applying the facts of this case and Mr. Nero's history to the statutory factors, Mr. Nero cannot overcome the presumptions.

**B.     Nature and Circumstances—18 U.S.C. § 3142(g)(1)**

Mr. Nero's crimes implicate several of the express factors under 18 U.S.C. § 3142(g)(1).

First, Counts 1, 3, 4, 5, 6, 7, and 9 all involve human trafficking in violation of Title 18 U.S.C. § 1591, which the Court considers under 18 U.S.C. § 3142(g)(1) ("whether the offense is . . . a violation of section 1591"). By definition, human trafficking is a violent, fraudulent, and coercive crime. *See* 18 U.S.C. § 1591(a) ("force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act[.]"). Here, multiple witnesses stated that the conspiracy—including Mr. Nero—employed beatings, various threats, degrading actions, and dangerous addictive drugs to coerce the human trafficking victims into commercial sex acts. Mr. Nero's boss, Bell, allegedly killed one female victim ("Juicy") for failure to pay a drug debt, and police recently discovered that another ("7") is dead. A video clip shows another man violently striking another apparent female victim in the head. During the January 12, 2017

10

search warrant, agents rescued over a dozen lethargic and addicted female victims clustered in disheveled rooms.

Second, Counts 11 and 18 are controlled substance offenses, which is another factor. *See* 18 U.S.C. § 3142(g)(1) ("whether the offense . . . involves a controlled substance"). The evidence shows the impressive scale of the conspiracy's drug distribution. Agents surveilled hundreds of drug transactions, and recovered extensive evidence of drug use and distribution during the search warrant. Again, several witnesses stated that Mr. Nero was directly involved in the drug conspiracy, and he is on video selling drugs while customers mill about.

The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6. *See also United States v. Gray*, 20 F. App'x 473 (6th Cir. 2001) (conspiracy to possess with intent to distribute seven kilograms of cocaine, testimony from family members insufficient to overcome the presumption). There is more here, including strong evidence of violence, coercion, and several overdoses linked to Victory Inn drugs. On the November 3, 2017 police video alone, co-conspirator Pruitt brazenly discusses sex trafficking while a victim overdoses inside room 118.

Third, Mr. Nero's human trafficking and drug offenses carry stiff penalties, including mandatory terms of 15 or 20 years, and up to life in prison. These penalties reflect the serious nature of these crimes. *See*, *e.g.*, *Baldwin v. N.Y.*, 399 U.S. 66, 68

11

(1970) ("In deciding whether an offense is 'petty,' we have sought objective criteria reflecting the seriousness with which society regards the offense . . . and we have found the most relevant such criteria in the severity of the maximum authorized penalty.").

### C.  Weight of the Evidence—18 U.S.C. § 3142(g)(2)

The weight of the evidence "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. *See also Hazime*, 762 F.2d at 37 (the weight of evidence against the person "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community"). Here, the weight of the evidence of Mr. Nero's dangerousness and risk of non-appearance is strong.

More than one victim rescued from the Victory Inn stated that Mr. Nero abused them, would hit the girls to keep them "in check," and even guarded them like prisoners while they walked to prostitute themselves on Michigan Avenue. His dangerousness is confirmed by his long history of committing crimes while on supervision. And he has failed to appear for at least two prior hearings. This factor strongly favors detention.

### D.  History and Characteristics—18 U.S.C. § 3142(g)(3)

Mr. Nero's long and troubling criminal history is set out in the PSR. Mr. Nero cannot dispute his extensive record, nor can show that he has a stable employment

12

history. As shown below, Mr. Nero has at least 10 convictions, including eight or so for controlled substances. *See* PSR. He has violated probation eight times and committed crimes at least six times while on supervision. *Id*. He was arrested several other times between 2010 and 2014 (including for armed robbery). *Id*. And—contrary to Mr. Nero's claim in his motion (*see* R. 174: Motion for Revocation of Detention at Pg ID 495)—the PSR proves that he has failed to appear for multiple hearings. *Id*.

| Date of offense | Offense | Sentence | Supervised at time of new crime | Violated probation |
|---|---|---|---|---|
| 4-22-1995 | Felony firearm, Assault with a dangerous weapon | 2 years' probation | | Yes—3 times |
| 4-22-1999 | Controlled Substance - Delivery/Manf., Nar/Coc <50g | lifetime probation—and failed to appear for sentencing | | Yes |
| 10-14-1999 | Controlled Substance - Delivery/Manf., Nar/Coc <50g | lifetime probation | Yes—was on bond for 4-22-1999 charge | Yes |
| 8-3-2000 | Controlled Substance | 184 days in jail | Yes | |
| 12-15-2000 | Probation violations for 1999 convictions | 1-20 years in prison | Yes | |
| 7-22-2003 | Controlled Substance - Possess Narc/Cocaine < 25g | 3 years' probation | Yes | Yes |
| 11-28-2004 | Controlled substance possess | 90 days in jail | Yes | |

13

| Date of offense | Offense | Sentence | Supervised at time of new crime | Violated probation |
|---|---|---|---|---|
| 6-25-2005 | Controlled Substance - Delivery/Manf., /Coc <50g | 3 years' probation | Yes | Yes—and failed to appear for hearing |
| 11-5-2007 | Stolen Property - Receiving and Concealing | 1-5 years | Yes | |
| 5-3-2009 | Controlled substance - Use | 20 days in jail | | |
| 2010-2014 | Arrested eight times (including for armed robbery and drugs) | | | |
| 8-4-2015 | Stolen Property - Receiving and Concealing, and Controlled Substance - Possess Narcotic/Cocaine < 25g | 1 year + 4 years' probation | | Yes—twice |
| Victory Inn conspiracy begins in 2015 | 7 human trafficking + 2 controlled substance | | Yes | |

Mr. Nero also significantly escalated his criminal activities in this case by conspiring to sell women and drugs with other men who have long criminal records for violence, weapons, and drug dealing. On top of this, it took the US Marshals three months to locate him because he was being aided by associates. (Ex 1). And when they did find Mr. Nero, he was concealing his identity. *Id*.

Mr. Nero has also used several aliases, including "Sean Spikes."

14

### E. Danger to Community or Anyone—18 U.S.C. § 3142(g)(4)

Mr. Nero is a danger to the community, to others, and to his own safety. There is extensive evidence of his involvement in a large-scale drug distribution conspiracy at the Victory Inn. "To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone*, 608 F.3d at 947, n. 6. *See also United States v. Leon*, 766 F. 2d 77, 81 (2d Cir. 1985) ("the harm to society caused by narcotics trafficking is encompassed within Congress's definition of 'danger'")). There were also at least three overdose victims traced to the Victory Inn conspiracy.

Worse, Mr. Nero had a major role in facilitating, abusing, and coercing the female victims into commercial sex acts. Mr. Nero and his co-conspirators directly benefitted from exploiting these women. "Congress [has] recognized that human trafficking, particularly of women and children in the sex industry, 'is a modern form of slavery, and it is the largest manifestation of slavery today.'" *United States v. Walls*, 784 F.3d 543, 548 (9th Cir.), *cert. denied*, 136 S. Ct. 226 (2015) (citing 22 U.S.C. § 7101(b)(1)).

### III. <u>Conclusion</u>

This Court should deny Mr. Nero's motion.

Respectfully Submitted,

Daniel L. Lemisch
Acting United States Attorney

*/s Jerome F. Gorgon Jr.*
JEROME F. GORGON JR.
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9676
jerome.gorgon@usdoj.gov

Date: January 2, 2018

## Certificate of Service

I hereby certify that on January 2, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

      */s Jerome F. Gorgon Jr.*
JEROME F. GORGON JR.
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9676
jerome.gorgon@usdoj.gov