**United States District Court**
**Eastern District of Michigan**
**Southern Division**

UNITED STATES OF AMERICA,                                    No. 17-20183

                Plaintiff,                                    Hon. Mark A. Goldsmith

v.

D-5 HAROLD NERO,

                Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER**
**(Dkt. 174)**

This matter is currently before the Court on Defendant Harold Lashawn Nero's motion for revocation of detention order (Dkt. 174). A hearing on the motion was held on February 21, 2018. For the following reasons, Nero's motion is denied.

## I. BACKGROUND

A grand jury indicted Nero on nine charges stemming from his alleged role in a large human trafficking and drug distribution conspiracy at the Victory Inn hotel (the "Victory Inn") on Michigan Avenue in Detroit, Michigan. See Superseding Indictment (Dkt. 98). Nero consented to detention before the magistrate judge on June 30, 2017. See Consent Order (Dkt. 74). Nero later filed the instant motion, requesting that the order of detention be set aside and that he be released pending trial.

### A.   The Government's Proffered Information

The Government proffered the following items: (i) the pretrial services report recommending detention, (ii) video clips from the Victory Inn's surveillance system, (iii) the Government's pole camera video, (iv) thirteen independent victim and witness statements, (v)

1

Nero's criminal history, and (vi) information from the U.S. Marshals' report of Nero's arrest. From these sources, the Government claims the following facts supporting detention.

### 1. The Initial Investigation and Surveillance

The federal investigation began in September 2016, when an emergency room human-trafficking and heroin-overdose victim ("Victim 1") told federal agents from the Department of Homeland Security's Homeland Security Investigations ("HSI") about a conspiracy that was forcing women into prostitution and selling drugs at the Victory Inn. Victim 1 stated that she had swallowed the drugs to avoid detection on the orders of a pimp named "Tone," an alias of Nero's Co-Defendant, Darrick Bell. Bell is a convicted murderer and drug dealer, with several firearms convictions. Bell worked hand-in-hand with Nero, who was an enforcer and drug distributor for Bell.

In subsequent interviews, Victim 1 confirmed that Bell is the leader of the conspiracy, that he uses drugs to coerce the human-trafficking victims, and that she was terrified of his physical assaults. Victim 1 said that the Victory Inn staff was part of the conspiracy and would direct sex dates to certain rooms.

Another human-trafficking victim ("Victim 2") described an extensive drug and human-trafficking operation headed by Bell, where she and other women had been held against their will for several weeks. Victim 2 stated that the conspiracy forced women to commit sex acts for money in exchange for a room at Victory Inn for drugs to support their addictions. Victim 2 said that the Victory Inn staff was complicit in the criminal activity and that they only use a handful of rooms at the hotel for legitimate customers.

On November 3, 2016, Detroit Police and Detroit EMS responded to a female drug overdose victim ("Victim 3") in room 118 at the Victory Inn. While assessing Victim 3, Detroit

2

Police talked to Nero's Co-Defendant Terry "T" Pruitt at the door of room 118. On a Detroit Police bodycam video, Pruitt casually discusses the fact that he can procure prostitutes for customers.

On November 4, 2016, Detroit police spoke to a female victim ("Victim 4") at a gas station near the Victory Inn. Victim 4 stated that she was a prostitute who lived at the Victory Inn, and that Bell frequently delivered drugs to the hotel. A few days later, HSI installed a nearby pole camera to conduct surveillance on the Victory Inn. On November 23, 2016, a reliable confidential informant told police that multiple drug dealers were working out of the Victory Inn.

In early December, HSI and Detroit Police began conducting surveillance at the Victory Inn. They observed dozens of apparent hand-to-hand drug deals and commercial sex dates in several different rooms. The police performed traffic stops on several customers who left after short stays. One customer admitted that she had just purchased $30 worth of crack cocaine from the Victory Inn, that she had been buying crack cocaine for the past several months from various individuals at the Victory Inn, and that "lots" of "girls" work as prostitutes to support their drug habits. Another customer had crack cocaine he just bought at the Victory Inn. He said that he had been buying crack cocaine for the past three months at the hotel, and that any prostitute on Michigan Avenue would tell you to get drugs "at the Victory Inn."

On December 26, 2016, Dearborn Police responded to a drug-overdose call for a woman at the Best Value Inn hotel in Dearborn, Michigan, which is a few blocks from the Victory Inn. The female victim ("Victim 7") died at the scene. Victim 7's boyfriend stated that she had ingested drugs that they had purchased that day at the Victory Inn.

On December 29, 2016, another reliable confidential informant told police that multiple people are selling drugs and "pimping" girls at the Victory Inn.

### 2.  The January 2017 Search Warrant

On January 12, 2017 at 6:00 a.m., HSI and local police executed a Federal search warrant for 25 rooms at the Victory Inn.  During the execution, agents rescued 14 lethargic female trafficking victims who were suffering from drug withdrawal in disheveled rooms.  They arrested Nero's Co-Defendant Michael "Man" Randol after he tossed 35 grams of crack cocaine from a room window.  Agents also recovered one loaded firearm, narcotics, paraphernalia, and dozens of cell phones.  Most of the hotel rooms contained extensive evidence of recent drug use (used needles, used baggies, etc.).  Agents also seized the Victory Inn's encrypted video surveillance data from the hotel's cameras, and records including thousands of handwritten room receipts.

After rescuing the human-trafficking victims from the Victory Inn, agents were able to interview some of them who confirmed that Bell and the other co-defendants controlled, directed, and participated in the drug distribution and commercial sex at the Victory Inn.  More than one victim stated that Nero abused them, would hit the girls to keep them "in check," and even guarded them like prisoners while they walked to prostitute themselves on Michigan Avenue.

### 3.  The Evidence from the Victory Inn

Preliminary review of the pole camera video and pictures shows a massive volume of apparent hand-to-hand drug and commercial sex transactions from almost every Victory Inn room across a period of two months.

Agents also recovered approximately 14,300 hours of encrypted video—the equivalent of more than 1 year and 7 months from the Victory Inn's 13 surveillance cameras.  At the time of the April 6, 2017 hearing, agents had been able to review of 66 hours (about 0.04%) of the video, which show hundreds of drug transactions, widespread prostitution, violence, and members of the conspiracy. Eleven video clips from this initial sample reveal drug transactions, human-trafficking

victims, and drug use (including at least one apparent overdose that lasted a considerable amount of time yet went unaddressed). Nero is visible participating in drug-related activities and can be seen walking past the overdosing woman. Subsequent agent review of video from just two of the 13 cameras revealed approximately 567 apparent drug and human-trafficking interactions.

Three clips from January 2, 2016 and January 3, 2016, from yet another internal hallway camera, show widespread drug dealing and human trafficking victims. In the clips, Nero directs drug traffic, drug customers crowd the hallway, hand-to-hand deals take place, and a woman appears to overdose.

### 4. Nero's Post-Indictment Evasion

On March 29, 2017, a federal grand jury indicted Nero; a warrant for his arrest followed. See Indictment (Dkt. 17). The U.S. Marshals Service conducted numerous interviews and surveillance operations when the case was assigned to the Detroit Fugitive Apprehension Team ("DFAT"). DFAT's investigation showed that Nero was residing in the Detroit area and that he was receiving assistance from his friends and family to conceal his whereabouts. DFAT interviewed known associates of Nero, all of whom denied knowing his whereabouts. DFAT determined that the associates' statements were false, because Nero had been sighted in the area of his associates within days of the DFAT officers' interviews.

On June 28, 2017, DFAT learned that Nero was hiding at 9781 Petoskey in Detroit. Upon arrival at that location, a subject matching Nero's physical characteristics exited the location and was attempting to conceal his face with his hands, while wearing a hooded shirt and sunglasses. Nero walked from the location between houses, avoiding walking directly on the street as he left the area. DFAT maintained visual surveillance on Nero and arrested him near an intersection.

Nero's co-conspirator Bell remains at-large.

**B.     Nero's Proffered Information**

In connection with his motion for revocation of detention, Nero proffers several letters from friends, family, and acquaintances. One man, Gregory Stocchi, describes Nero's good character, and states that he can provide Nero a job and place to live. See Letter re: Basic Good Character of Harold Nero, Ex. A to Def. Mot., at 2 (cm/ecf page) (Dkt. 174-1). Nero's father also writes that Nero is "kind and gentle." See Letter re: Basic Character of Harold Nero, Ex. B to Def. Mot., at 4 (cm/ecf page) (Dkt. 174-1). Nero's father states that it would help him to have Nero released, as he is handicapped. Id. Nero additionally provides letters from five women who have each known him for several years, which discuss Nero's non-violence and kindness towards them. See Exs. C-D, F-H to Def. Mot. (Dkt. 174-1).

## II. ANALYSIS

The district court has original jurisdiction over the matter and reviews the issue of detention pursuant to 18 U.S.C. § 3145.

**A.     This is a Presumption Case**

"[W]hen a 'judicial officer finds that there is probable cause to believe' that a defendant committed one of the crimes listed in section 3142(e)(3), there is a presumption in favor of detention: 'Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]'" United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)(3)). "A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." Id. (citing United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985)). "Section 3142(e)(3)'s presumption in favor of detention imposes only a 'burden of production' on the defendant, and the government retains the 'burden of

persuasion.'" Id. "Although a defendant's burden of production 'is not heavy,' he must introduce at least some evidence." Id.

However, even when a defendant satisfies his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id. "[T]he presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." Id. To rebut the presumption, then, "a defendant should present all the special features of his case that take it outside the congressional paradigm." Id. at 946 (quotations omitted).

Here, the grand jury found probable cause and indicted Nero for seven sex-trafficking crimes (Counts 1, 3, 4, 5, 6, 7, and 8). See Superseding Indictment. Each of these is an offense under Chapter 77 of Title 18, United States Code, with a maximum term of imprisonment of 20 years or more, and triggers a rebuttable presumption in favor of detention pursuant to 18 U.S.C. § 3142(e)(3)(D). The grand jury did the same for Nero's controlled-substance crimes (Counts 11 and 18). See Superseding Indictment. Both of these have a maximum term of 10 years or more; these counts carry their own separate presumption in favor of detention under 18 U.S.C. § 3142(e)(3)(A).

After applying the proffers to the factors below, the Court finds that, while Nero produced some evidence to rebut the presumption, consideration of all of the evidence—including the evidentiary weight of a rebutted presumption—requires detention.

**B.     Nature and Circumstances—18 U.S.C. § 3142(g)(1)**

Title 18 U.S.C. § 3142(g)(1) states:

> (g) The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

7

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device[.]

The Government's proffer—based on several witness statements and the videos—and the grand jury's indictment implicate several of the express factors under 18 U.S.C. § 3142(g)(1). These weigh heavily in favor of detention.

First, Counts 1, 3, 4, 5, 6, 7, and 8 all involve human trafficking in violation of Title 18 U.S.C. § 1591, which the Court considers under 18 U.S.C. § 3142(g)(1) ("whether the offense is . . . a violation of section 1591"). By definition, human trafficking is a violent, fraudulent, and coercive crime. See 18 U.S.C. § 1591(a) ("force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act[.]"). Here, multiple witnesses stated that the conspiracy—including Nero—employed beatings, various threats, degrading actions, and dangerous addictive drugs to coerce the human-trafficking victims into commercial sex acts. Nero's boss, Bell, allegedly killed one female victim ("Juicy") for failure to pay a drug debt, and police recently discovered that another ("7") is dead. A video clip shows another man violently striking another apparent female victim in the head. During the January 12, 2017 search warrant, agents rescued over a dozen lethargic and addicted female victims clustered in disheveled rooms.

Second, Counts 11 and 18 are controlled-substance offenses, which is another factor. See 18 U.S.C. § 3142(g)(1) ("whether the offense . . . involves a controlled substance"). The evidence shows the scale of the conspiracy's drug distribution. Agents surveilled hundreds of drug transactions, and recovered extensive evidence of drug use and distribution during the search

8

warrant. Again, several witnesses stated that Nero was directly involved in the drug conspiracy, and he is on video selling drugs while customers mill about.

The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." Stone, 608 F.3d at 947 n.6. There is far more here, including strong evidence of violence, coercion, and several overdoses linked to Victory Inn drugs. On the November 3, 2017 police video alone, co-conspirator Pruitt brazenly discusses sex trafficking while a victim overdoses inside room 118.

Third, Nero's human trafficking and drug offenses carry stiff penalties, including mandatory terms of 15 or 20 years, and up to life in prison. These penalties reflect the serious nature of these crimes. See, e.g., Baldwin v. N.Y., 399 U.S. 66, 68 (1970) ("In deciding whether an offense is 'petty,' we have sought objective criteria reflecting the seriousness with which society regards the offense . . . and we have found the most relevant such criteria in the severity of the maximum authorized penalty.").

C.  **Weight of the Evidence—18 U.S.C. § 3142(g)(2)**

The weight of the evidence against the person, which this Court considers pursuant to 18 U.S.C. § 3142(g)(2), "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." Stone, 608 F.3d at 948. See also Hazime, 762 F.2d at 37 (the weight of evidence against the person "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community"). Here, the weight of the evidence of Nero's dangerousness and risk of non-appearance is strong.

9

Nero submitted several letters from family and friends attesting to his kindness and non-violent nature. But this is not persuasive. See United States v. Gray, 20 Fed. App'x 473, 475 (6th Cir. 2001) (in conspiracy to possess with intent to distribute seven kilograms of cocaine, testimony from relatives insufficient to overcome the presumption). Indeed, more than one victim rescued from the Victory Inn stated that Nero abused them, would hit the girls to keep them "in check," and even guarded them like prisoners while they walked to prostitute themselves on Michigan Avenue.

Nero's dangerousness is confirmed by his long history of committing crimes while on supervision. This factor favors detention.

**D.     History and Characteristics—18 U.S.C. § 3142(g)(3)**

Section 3142(g)(3) states that "The judicial officer shall . . . take into account the available information concerning . . . (3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]"

18 U.S.C. § 3142(g)(3).

Nero has at least 10 convictions, including at least seven for controlled substances. He has violated probation eight times and committed crimes at least six times while on supervision. He was arrested several other times between 2010 and 2014 (including for armed robbery).

Nero also significantly escalated his criminal activities in this case by conspiring to force women into prostitution and sell drugs with other men who have long criminal records for violence,

10

weapons, and drug dealing. On top of this, U.S. Marshals had to search for three months to locate him because he was being aided by associates. And when they did find Nero, he was concealing his identity. Nero has also used several aliases, including "Sean Spikes." In addition, Nero admits that he has a "long history of addiction" to drugs, and several of the letters he provided to the Court confirm his deep involvement with illegal drugs. He has no verifiable employment history.

On top of all this, Nero was on probation for 2015 convictions during the time of the presently-charged conspiracy.

Nero's history and characteristics support detention.

E.    **Danger to Community or Anyone—18 U.S.C. § 3142(g)(4)**

Nero is a danger to the community, to others, and to his own safety. There is extensive evidence of his involvement in a large-scale drug distribution conspiracy at the Victory Inn. "To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community." Stone, 608 F.3d at 947 n.6; see also United States v. Leon, 766 F. 2d 77, 81 (2d Cir. 1985) ("[T]he harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger'"). There were also at least three overdose victims traced to the Victory Inn conspiracy. Nero himself proffered at the detention hearing that he has a long-standing addiction and that several of the people in the Victory Inn videos had also overdosed and died.

Again, the grand jury has indicted Nero and found probable cause that he committed seven separate human trafficking violations that required the use of "force, threats of force, fraud, [or] coercion" against his victims. 18 U.S.C. § 1591(a). And multiple female victims found at the Victory Inn on January 12, 2017, stated that Nero physically abused them to keep them "in check," and even guarded them like prisoners while they walked to prostitute themselves on Michigan Avenue.

11

Like all the others, this factor militates against bond.

**F.      Nero's Proposed Alternative to Custody**

This Court is unconvinced by Nero's attempts to establish that he is not dangerous and that he intends to appear for trial. He volunteers to wear a GPS tether, "but a tether offers little assurance of an appearance or an intent to forego activities that pose a danger to the community." United States v. Tawfik, No. 17-20183, 2017 WL 1457494, at *8 (E.D. Mich. April 25, 2017). See also United States v. Edwards, No. 07-20605, 2010 WL 157516, at *5 (E.D. Mich. Jan. 13, 2010) (agreeing that a tether "would be entirely insufficient to either insure Defendant's appearance or protect the community from the danger posed by Defendant"); United States v. Cureton, No. 12-20287, 2013 WL 4496276, at *2 (E.D. Mich. Aug. 21, 2013) (holding that where a defendant is part of a violent organization, a GPS tether "would not alleviate the danger that Defendant poses to the community").

Accordingly, the Government proved by clear and convincing evidence that Nero presents a danger to the community, and proved by a preponderance of the evidence that he is a risk of flight, and that no condition or combination of conditions could reasonably assure the safety the community and his appearance in court.

### III. CONCLUSION

For the reasons provided, Defendant Nero's motion for revocation of detention (Dkt. 174) is denied.

SO ORDERED.

Dated:  April 16, 2018                                           s/Mark A. Goldsmith
     Detroit, Michigan                                              MARK A. GOLDSMITH
                                                                      United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 16, 2018.

               s/Karri Sandusky
                  Case Manager