UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION,

UNITED STATES OF AMERICA,

      Plaintiff,

Vs.                                                Case No. 17-cr-20183
                                                HON.  MARK A. GOLDSMITH

HAROLD LASHAWN NERO (D-5),

      Defendant.

_____

MARK H. MAGDISON (P25581)
Attorney for Defendant Nero (D-5)
615 Griswold, Ste. 810
Detroit, MI 48226
313-963-4311;  313-995-9146 fax
mmag100@aol.com

_____

**DEFENDANT (D-5) HAROLD NERO'S MOTION TO SEVER TRIALS**

      Defendant Harold Nero (D-5) moves this Honorable Court under Fed. R. Crim. P. 14(a), to sever his trial from the other eight co-defendants' trials.

|  |  |
|---|---|
| Date: September 21, 2018 | Respectfully submitted,<br><br>By: /s/*Mark H. Magidson*<br>    MARK H. MAGIDSON (P25581)<br>    Attorney for Defendant Nero (D-5)<br>    615 Griswold, Suite 810<br>    Detroit, MI 48226<br>    (313) 963-4311; mmag100@aol.com |

## STATEMENT REGARDING CONCURRENCE

I certify and affirm that pursuant to LR 7.1(a)(2)(A), there was a conference between the attorneys of record in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought.

> By: /s/*Mark H. Magidson*
>     MARK H. MAGIDSON (P25581)
>     Attorney for Defendant Nero

# BRIEF IN SUPPORT OF
# DEFENDANT (D-5) HAROLD NERO'S MOTION TO SEVER TRIALS

## FACTS

Defendant is charged in the Superseding Indictment (Doc. 98) with the following nine counts out of the total 19 counts charged:

- Count One – sex trafficking conspiracy, contrary to 18 U.S.C. § 1594(c);

- Counts Three through Eight – sex trafficking by force, fraud and coercion, aiding and abetting, contrary to 18 U.S.C. § 1591(a) & (b), and 18 U.S.C. § 2;

- Count Eleven – conspiracy to distribute a controlled substance, contrary to 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C); and,

- Count Eighteen – maintaining drug-involved premises, aiding and abetting, contrary to 21 U.S.C. § 856(a)(1), and 18 USC § 2.

The Government generally alleges that the co-defendants engaged in conduct that either aided and abetted or caused eight unidentified women, over the age of eighteen, to engage in commercial sex acts, that is, the co-defendants engaged in a sex trafficking conspiracy. (Ind., Doc. 98, Pg ID 297-299).

The Government also alleges that the co-defendants conspired to possess with intent to distribute cocaine and heroin. *Id*. at 309. The allegation is that the co-defendants used the Victory Inn hotel to manage and control the processing and distribution of the drugs, variously acting as lookouts or protecting the drugs. *Id*. at 310. The co-defendants also used the drugs to control and coerce the eight women to commit commercial sex acts at the Victory Inn. *Id*. at 311.

Defendant Nero was living at the Victory Inn when the Government raided the premises. Years ago when Nero was released there from prison, he was paroled to the Victory Inn with the approval of the Michigan Department of Corrections.

Being sporadically employed, Nero found it difficult to afford his room; however, he was able to pay for his room by doing odd jobs around the inn such as cleaning up the outside of the premises and doing other similar basic work.

Nero had befriended many of the women who were committing commercial sex acts at the Victory Inn or soliciting sex for money on their own up and down Michigan Avenue.

Nero was involved with the women because he lived at the Victory Inn, and because he was a heroin addict. He used drugs, but contrary to the assertions in the Indictment, he did not force drugs on the women or conspire with others to force them into prostitution to pay off their drug or hotel room debts. There were many times when Nero would use drugs that the women had obtained on their own. Nero

mainly bought his drugs from other sources but admits to buying drugs from some of the other co-defendants; but always, it was solely for his own use.

After an investigation, the FBI obtained a warrant and raided the Victory Inn. Nero was arrested during the raid, interviewed by the agents, and then released. Later, he was indicted and re-arrested.

Nero's defense in this case is that he was merely present, using drugs. He was aware of the co-defendants' criminal drug activity and the prostitution of the women at the Victory Inn; however, he did not join the conspiracy, participate in its criminal acts, nor did he aid and abet the conspiracy. Nero also did not commit any acts constituting sex trafficking or drug distribution.

## ARGUMENT

If co-defendants are properly joined under Fed. R. Crim. P. 8(b), the trial Court must determination whether joinder prejudices Defendant. If the joinder and consolidation of defendants for trial "appears to prejudice a defendant . . . the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

"[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the

defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S. Ct. 933, 938 (1993).

In *United States v. Ayala Lopez*, 319 F. Supp. 2d 236 (D.P.R. 2004), a District of Puerto Rico case cited for persuasion, the co-defendants in a capital, death eligible case moved to sever trials. *Id*. at 237. (Although Ayala Lopez involved a death penalty eligible co-defendant, the complex circumstances are similar to this case.) There were three non-capital defendants as well as one co-defendant who faced a possible sentence of death. *Id*. All defendants were charged with Counts One and Two of the Indictment, but the capital defendant was charged with two separate counts, three and four. *Id*. After analyzing the circumstances, the district court granted the motion to sever. *Id*.

In *Ayala Lopez*, the non-capital co-defendants argued that joining their cases affected their rights to due process and prejudiced them because they would have to present antagonistic defenses before a death-certified jury. *Id*. at 238.

The *Ayala Lopez* court found that the time required for two separate trials would not be substantially greater than the time required for a joint trial, *Id*. at 239, and that severance would allow for a quicker disposition of the non-capital cases. *Id*. The court also noted that in the majority of federal death penalty cases some type of severance has been granted. *Id*. at 240 (citation to the record omitted). In the twelve cases that reached the trial stage where there was a single capital

defendant and one or more non-capital defendants, severance had been granted eight times (67%). *Id*.

The *Ayala Lopez* court cited the US Supreme Court's decision in *Zafiro, supra,* regarding the standard for severing defendants and antagonistic defenses. *Ayala Lopez, supra* 319 F. Supp. 2d at 237. The US Supreme Court described the serious risks that would require severance:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. (Emphasis added.) [*Zafiro v. United States*, *supra* 506 U.S. at 539 (citations omitted).]

The *Ayala Lopez* court granted severance and gave the issue of antagonistic defenses greater weight than the other arguments or factors:

> Although not necessarily antagonistic, a joint trial will necessarily result in Defendants pointing at each other in an attempt to exculpate themselves or ameliorate guilt. This alone is not a reason to grant severance. However, we are not blind to the fact that "the dangers inherent in joint trials become intolerable when the co-defendants become gladiators, ripping each other's defense apart. In their antagonism, each lawyer becomes the government's champion against the co-defendant, and the resulting struggle leaves both defendants vulnerable to the insinuation that a conspiracy

explains the conflict." *United States v. Romanello*, 726 F.2d 173, 182 (5th Cir. 1984). This danger is heightened given that no due process or prior notice requirements attach to Co-defendants, resulting essentially in the trial by ambush that the modern discovery procedure rules and court orders to that affect were explicitly designed to prevent.

> While the defenses … may not fully meet the mutually exclusive standard, there will be substantial and significant differences in the tactical approaches taken by their respective counsel. At times they will have different positions on evidentiary objections, and different approaches to the cross-examination of the government's witnesses and in the presentation of defense witnesses.

*United States v. McVeigh*, 169 F.R.D. 362, 370 (D. Colo. 1996). After reading the submitted briefs on the issue of conflicting defenses, inclusively that of the capital Defendant, we are of the impression that the Defendants, both the capital Defendant as well as the non-capital Defendants, face an unacceptable risk of prejudice if tried together. [*Ayala Lopez, supra* 319 F. Supp. 2d at 238-239.]

A defendant must show substantial prejudice or that "an antagonistic defense would present a conflict 'so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.' " *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992)(citations omitted).

In this case, Defendant Nero is charged with nine of the 19 total counts charged against all defendants. The Indictment does not describe Nero's specific conduct, but had Nero been a significant part of the alleged crimes, his actions could have been described.

However, Nero maintains that the antagonistic and mutually exclusive defense that he was merely present, using drugs. He was aware of the co-defendants' criminal drug activity and the prostitution of the women at the Victory Inn; however, he did not join the conspiracy, participate in its criminal acts, nor did he aid and abet the conspiracy. Nero also did not commit any acts constituting sex trafficking or drug distribution.

This is just like the situation in *Ayla Lopez, supra,* where the defenses may not have been fully mutually exclusive, but there will be substantial and significant differences in the tactical approaches taken by the defendants in this case.

The evidence admissible against the co-defendants would likely prejudice Nero who was merely present, living at the Victory Inn.

The defendants will have different approaches to the cross-examination of the Government's witnesses because Nero will explicitly question the women witnesses/victims to clarify that Nero was not engaged in any conduct like that of the co-defendants in relation to his contact with some of the women.

Nero's defense is that his drug addiction and residence at the Victory Inn made him look guilty by association and was the only reason he was swept up in the federal agent's raid, which was legitimately intended for the co-defendants' criminal acts.

WHEREFORE, Defendant Nero (D-5) moves this Honorable Court to sever his trial from the co-defendants' trials.

Date: September 21, 2018

Respectfully submitted,

By: /s/*Mark H. Magidson*
 MARK H. MAGIDSON (P25581)
 Attorney for Defendant Nero (D-5)
 615 Griswold, Suite 810
 Detroit, MI 48226
 (313) 963-4311
 MMAG100@AOL.COM

## CERTIFICATE OF SERVICE

I certify that on September 21, 2018, I electronically filed the above *Motion* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

By: /s/*Mark H. Magidson*
 MARK H. MAGIDSON (P25581)
 Attorney for Defendant Nero (D-5)