UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-                                      Case No. 17-20183
                                               Hon.  MARK A. GOLDSMITH

D-5, HAROLD LASHAWN NERO,

    Defendant.
_____/

## COMBINED MOTION AND BRIEF TO TRANSFER DEFENDANT TO A DETENTION CENTER THAT HAS MENTAL HEALTH TREATMENT FOR DETAINEES, OR ALTERNATIVELY PROVIDE HIM WITH A BOND WITH CONDITIONS

Now comes Defendant, Harold Lashawn Nero, and in support of his Motion to Transfer to a Facility that has Mental Health Treatment, or alternatively provide him a bond with Conditions, states unto this Honorable Court as follows:

1. Defendant's counsel did seek concurrence in this motion with the U.S. attorney's office prior to filing this motion.

2. Defendant is charged with in a multi- count Indictment, with Count I, Sex Trafficking Conspiracy, contrary to 18 U.S.C. §1594(c); Count II, sex trafficking by force, fraud and coercion, contrary to 18 U.S.C. §1591(a)&(b); Count III, sex trafficking by force, fraud and coercion, contrary to 18 U.S.C. §1591(a)&(b); Count IV, Conspiracy to Distribute a Controlled Substance, Contrary to 21 U.S.C. §§ 841(a)(1)l 841(b)(1)(A); 841(b)(1)(C); and Count VIII, Maintaining Drug-In-

volved Premises, contrary to 21. U.S.C., §856(a)(1) and or aiding and abetting of the same, contrary to 18 U.S.C. §2.

3. The facts that gave rise to this Indictment arose when investigators determined that Mr. Nero along with others were involved in a scheme to allegedly drug young women with heroin and other drugs, and then, in order for these women to pay for the drugs, they had to serve or were forced to serve as prostitutes/sex slaves, providing sexual services to a clientele that frequented the Victory Motel on the west side of Detroit, with the proceeds from the prostitution and drugs going to Defendants.

4. Prior to his arrest, Mr. Nero was a drug user and suffered from psychological and mental issues.

5. He was arrested on this Indictment in June 2017 and has been detained ever since.

6. For over a year, he has been in the Midland (Michigan) County Jail as a Federal Detainee.

7. The Midland County Jail, as most local county jails, are not designed for a long-term detention facility; in fact the longest jail sentence a state prisoner can receive is one year. Mr. Nero has exceeded that time period.

8. The Midland County Jail is not equipped to treat Mr. Nero's mental health issues and he is suffering from server anxiety and depression.

9. Left untreated his mental condition will continue to deteriorate.

10. In two successive meetings, the latest being September 8, 2018, Mr. Nero expressed to his counsel that his condition is getting worse and that he needs medication to control his anxiety.

11. He has requested the local jailers to accommodate him and refer him to a medical doctor who can prescribe medicine and a psychologist who can treat his mental disturbances.

12. He was advised that this would not be possible and instead he was told that he could see the church people who could help him pray; he does not need help praying, he needs medical treatment

13. He has been denied his medicine and no efforts have been made to allow him to see a doctor or to even get his medicine.

14. Further, being a county jail, there are no "in-person" visits; no contact with friends and family for well over a years can create significant stress and anxiety, even if there were no pre-existing condition.

15. As a consequence of this lack treatment, counsel for the Defendant is having a difficult time in communicating with Mr. Nero at to how to proceed because the conditions imposed upon him at Midland County Jail have impacted upon his ability to concentrate and think logically due to being denied his anti-anxiety medicine.

16. Most recently Nero's counsel sent him a copy of this Court's recent order establishing dates for a Motion Cutoff; Mr. Nero's response to that benign order was to file an Appeal the Sixth Circuit Court of Appeals and Counsel for the Defendant

has received an "appeal letter" from the Sixth Circuit directing him to file an Appearance and order the transcripts in preparation of the appeal.

17. Mr. Nero needs medical attention to calm his condition, otherwise he may continue to engage in rash conduct

## ARGUMENT

18. Court's have historically declined Defendant's requests to intercede in mistreatment while being detained since the party complained of is not a party in this case. Courts have concluded there is no authority to act. However, after extensive research, the Defense was able to obtain specific authority for this Court to grant such a motion, based upon the Government's position in the ".FBI-Apple Inc. case." The motion filed by the Government on February 19, 2016, moved the California Central District Court to compel Apple (a non-party) to assist the FBI to search an alleged terrorist's iPhone. The facts of the FBI-Apple case fit squarely with this case in that the California Magistrate had ordered a third-party, Apple, to not only assist the FBI, but to do so in a way that could reveal its trade secrets. The Government in that case relied upon the All Writs Act(28 U.S.C. 1651) to obtain its order against Apple during a criminal investigation, without opening a civil case (a novel use of the act outside of a civil case context), and that act is discussed in relation to this case below.

## THE ALL WRITS ACT

20. The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 USC 1651(a). As the US Supreme Court has stated, "the All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute." Pa. *Bureau of Corr. v. United States Marshals Serv*., 474 U.S. 34, 43, 106 S. Ct. 355, 361 (1985). The All Writs Act also permits a district court, "in aid of a valid warrant, to order a third party to provide non burdensome technical assistance to law enforcement officers." *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1289 (9th Cir. 1979). The US Supreme Court has also stated the following regarding the All Writs Act: "This statute has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve "the rational ends of law."'" *Harris v. Nelson*, 394 U.S. 286, 299 (1969), quoting *Price v. Johnston*, 334 U.S. 266, 282 (1948). Indeed, "[u]nless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942). [*United States v. N.Y. Tel. Co*., 434 U.S. 159, 172-73, 98 S. Ct. 364, 372 (1977)]

21. The "courts have significant flexibility in exercising their authority under the Act." *United States v. Catoggio*, 698 F.3d 64, 67 (2d Cir. 2012)(citing *United States v. N.Y. Tel. Co*., 434 U.S. 159, 173, 98 S. Ct. 364, 372 (1977)). "The power

5

conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice," *N.Y. Tel. Co., supra* 434 U.S. at 173-74 (citing *Mississippi Valley Barge Line Co. v. United States*, 273 F.Supp. 1, 6 (ED Mo. 1967), summarily aff'd, 389 U.S. 579 (1968); and *Board of Education v. York*, 429 F.2d 66 (CA10 1970), *cert. denied*, 401 U.S. 954 (1971). And the Act "encompasses even those who have not taken any affirmative action to hinder justice." *Id*. (citing *United States v. McHie*, 196 F. 586 (ND Ill. 1912); and *Field v. United States*, 193 F.2d 92, 95-96 (CA2), *cert. denied*, 342 U.S. 894 (1951)).

22. Recently, the FBI has relied upon the All Writs Act to obtain an order compelling a third party, Apple Inc., to assist the FBI with unlocking the passcode of a terrorist's iPhone—and in the process reveal trade secrets. (In re Search of Apple iPhone, Hon. Sheri Pym, Case No. 16-cm-00010-SP, Central District of California, Doc. # 1, 2/19/16, Page ID 7). Apple is a private corporation, but in this case, Defendant seeks to order a governmental entity to transfer him to Milan prison or allow contact visitation under the All Writs Act. That distinction is immaterial to this issue, though, since this Court may also rely upon the All Writs Act to order third-party governmental departments to comply as well. In *Benjamin v. Malcolm*, 803 F.2d 46, 47-48 (2d Cir. 1986), the Second Circuit held that, under the authority of the Act, the district court in that case had the authority to join the third-party New York State Department of Correctional Services as defendants and could fur-

ther direct "them promptly to accept custody of each adult male inmate housed in [the] City facility, who has been sentenced to a term of imprisonment in a State prison. The court ordered them to accept custody of each prisoner within 48 hours after papers for transfer of the prisoner to a State facility had been completed." *Id.*

23. Here, the conditions of defendant's pre-trial detention are aggravating his documented depression and mental illness, the jail conditions have no relation to his status as an innocent person awaiting trial, and they have interfered with his assistance of counsel in preparation of his defense at trial. The Defendant can testify to his treatment and lack of adequate psychological care. Social scientists have studied how a client's mental functioning can directly impact upon the tasks that she is obligated to perform.

24. Decades of research indicate that visits from family improve institutional behavior and lower the likelihood of recidivism for inmates (e.g., Borgman, 1985; Carlson and Cervera, 1992; Casey-Acevedo and Bakken, 2001; Bales and Mears, 2008; Holt and Miller, 1972). In one of the first studies of the effects of prison visitation on recidivism, Holt and Miller (1972) found that only 2 percent of prisoners who had three or more visitors in their final year of incarceration returned to prison within a year of release, compared to 12 percent of prisoners who had no visitors. In subsequent studies of prison visits and furlough programs, researchers found similar results (e.g., Adams and Fischer, 1976; Glaser, 1964; Howser and McDonald, 1982; Leclair, 1978). More frequent and intense visits with family and

friends, either through visits or furloughs, decrease the likelihood of recidivism and parole failure.

25. In a recent study, Derkzen et al. (2009) compared post-release outcomes among 6,537 Canadian inmates who did not receive any visits, inmates that received standard prison visits, and inmates who received special private family visits. Like Bales and Mears (2008), Derkzen and colleagues (2009) examined visits during the last year of confinement for offenders. The results of this study were similar to the results of the Bales and Mears (2008) study, as prisoners who received visits from family and friends were significantly less likely to reoffend or be readmitted to prison. Private family visits were associated with an even larger reduction in recidivism compared to regular visits. Prisoners who participated in the longer, more private family visits were much less likely to reoffend or be readmitted to prison compared to inmates who had shorter, more restricted visits or no visits at all.

26. These studies clearly establish the benefits of contact visitation. and common sense tells us that allowing a detainee to have his medicine for mental and physical health will help in the administration of justice.

WHEREFORE, for the foregoing reasons, Defendant is requesting this Honorable Court to order or facilitate his transfer to the Milan Detention Center or to Order that the Midland County Jail to provide him with mental health treatment including providing medication if prescribed , require contact visitation at times that are

conducive and convenient to defendant's family and jail security and to require that Defendant have medical treatment and allowed to take his medicine, or alternatively revoke the detention order and set an bond with the appropriate conditions that would satisfy the court that Mr. Nero would appear and that society would be protected..

Date: September 26 , 2018

Respectfully submitted,

By: s/*Mark H. Magidson*
MMAG100@AOL.COM
MARK H. MAGIDSON (P25581)
Attorney for Defendant
615 Griswold, Suite 810
Detroit, MI 48226
(313) 963-4311
mmag100@aol.com

**CERTIFICATE OF SERVICE**

I certify that on September 26, 2018, I electronically filed the above motion with the Clerk of the Court using the ECF system.

By: s/*Mark H. Magidson*
MARK H. MAGIDSON (P25581)
Attorney for Defendant Nero
615 Griswold, Ste. 810
Detroit, MI 48226
313. 963-4311

9