UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

Case No. 17-cr-20183
Hon. Mark A. Goldsmith

DARRICK DERNARD BELL, et al.

      Defendants.
_____/

# OPINION & ORDER
## DENYING DEFENDANT HAROLD LASHAWN NERO'S MOTION TO EXCLUDE EVIDENCE (Dkt. 218)

This criminal case involves multiple defendants, all of whom were indicted by a grand jury on charges stemming from their alleged roles in a large human trafficking and drug distribution conspiracy at the Victory Inn Hotel on Michigan Avenue in Detroit, Michigan. On January 12, 2017, law enforcement officers executed a search warrant at the Victory Inn. According to Defendant Harold Lashawn Nero, law enforcement officers executed the warrant prematurely and he believes that any evidence resulting from the search should be suppressed. To that end, Nero has filed a motion to exclude the evidence obtained during the search (Dkt. 218). The Government filed a response (Dkt. 225), Nero filed a reply brief in support of his motion (Dkt. 229), and the Government filed a sur-reply (Dkt. 256). For the reasons stated below, the Court denies the motion.

## I. BACKGROUND

Law enforcement officers executed a search warrant at the Victory Inn the morning of January 12, 2017. Gov't Resp. at 2. The exact time is a matter of some dispute. The search warrant authorized law enforcement officers to execute the warrant "in the daytime 6:00 a.m. to

1

10:00 p.m." Search Warrant, Ex. A to Nero Mot., at 1 (Dkt. 218-1). Nero says that the search warrant was executed at 4:00 a.m. and completed by about 5:30 a.m. Nero Mot. at 3. In support of his assertion, Nero has provided the Court with Victory Inn internal camera images showing law enforcement officers entering the Victory Inn at 4:03 a.m. See Still Images, Ex. A to Reply (Dkt. 229-1). The Government says Nero is mistaken and provides the search warrant signed by the executing officer stating that the warrant was executed starting at 6:00 a.m. See Executed Warrant, Ex. 2 to Gov't Resp., at 3 (Dkt. 225-2). The Government further provides images of law enforcement entry and exit video from the Victory Inn front office with the wall clock showing 6:33 a.m. and 8:35 a.m., respectively. Gov't Resp. at 5.

Nero originally stated in his motion that he was present during the search, Nero Mot. at 6, but later admitted in his reply brief that he was not actually present when the warrant was executed, Nero Reply at 1. Nero was arrested later in the day on January 12, 2017 at his mother's home in Detroit. Report of Investigation re Nero ("Nero Interview"), Ex. 5-A to Gov't Sur-Reply, at 1-2 (Dkt. 256-2). When officers interviewed Nero, he said that he sometimes stays at his mother's house, but also occasionally stays at the Victory Inn, and another hotel. Id. at 2. He said that he last stayed at the Victory Inn about a week prior to his arrest, and that he did not stay there on January 11, 2017. Id. Nero said that he had been staying at the Victory Inn off and on every few months since March 2016 and that he changed rooms frequently. Id. The Government represents that the most recent room receipt found for Nero reflects that he rented Room 217 sixteen days before the search warrant was executed. Gov't Resp. at 6.

The Victory Inn search also included Room 201, Gov't Sur-reply at 1, a room Nero does not assert he ever stayed in. According to Nero, when asked what room numbers he stayed in, he said rooms 102, 103, and 109. Nero Interview at 4. He said that his co-defendant Michael Anthony

Randol stayed in Room 201. Id. Nero's statement is consistent with the room rental receipts showing that Randol rented Room 201 on January 10-11, 2017. Report of Investigation re Randol, Ex. 6 to Gov't Sur-reply, at 6 (Dkt. 256-3). And Randol was found and arrested in Room 201 during the execution of the search warrant on January 12, 2017. Id. at 2-3. Among the items recovered in Room 201 were Nero's social security card, his birth certificate, his Henry Ford College student ID card, and an MDOC Report Notice addressed to Nero. Gov't Sur-reply at 2.

## II. DISCUSSION

Nero seeks to suppress the evidence seized during the execution of the Victory Inn search warrant on January 12, 2017. Nero Mot. at 6. Nero argues that law enforcement officers executed the warrant on January 12 starting at 4:00 a.m. and, therefore, violated his Fourth Amendment right against unreasonable searches. Id. at 5-6. The Government argues that Nero lacks standing to seek suppression of the evidence found at the Victory Inn,[1] and, in any event, the search did not begin before 6:00 a.m. Gov't Resp. at 1-2. Because the Court agrees with the Government that Nero lacks a privacy interest necessary to challenge the Victory Inn search, it does not need to address whether the search was valid.

The threshold question is whether Nero had a privacy interest to challenge the search at the Victory Inn. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment guards against unreasonable

---

[1] Despite the pervasive use of the term "standing" in opinions, it should be noted that the Supreme Court has rejected the concept of standing in the context of the Fourth Amendment. See Rakas v. Illinois, 439 U.S. 128, 139-140 (1978). Rather, "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" Minnesota v. Carter, 525 U.S. 83, 88 (1998) (quoting Rakas, 439 U.S. at 140); United States v. Noble, 762 F.3d 509, 526 (6th Cir. 2014).

governmental searches in a variety of contexts, but "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Payton v. New York, 445 U.S. 573, 585-586 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)). However, the Fourth Amendment "protects people, not places." Katz v. United States, 389 U.S. 347, 351 (1967). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas v. Illinois, 439 U.S. 128, 134 (1978). In other words, for a defendant to argue successfully that evidence should be suppressed, a defendant must show that the government infringed his Fourth Amendment rights, which "hinges on whether he had a reasonable expectation of privacy in the residence." United States v. Washington, 573 F.3d 279, 282 (6th Cir. 2009).

To establish a reasonable expectation of privacy, the Sixth Circuit requires a defendant to show "(1) that he had a subjective expectation of privacy, and (2) that his expectation was objectively reasonable." Washington, 573 F.3d at 282. Although there is no "single metric or exhaustive list of considerations" to use when determining whether a person has a subjective and objectively reasonable expectation of privacy, Byrd v. United States, 138 S. Ct. 1518, 1527 (2018), courts have often considered a variety of factors, including whether the person has (i) a "proprietary or possessory interest in the place to be searched or item to be seized"; (ii) "the right to exclude others from the place in question"; (iii) "taken normal precautions to maintain his privacy"; and (iv) "exhibited a subjective expectation that the area would remain free from governmental intrusion," United States v. Allen, 720 F. App'x 254, 257 (6th Cir. 2018) (quoting United States v. Waller, 426 F.3d 838, 844 (6th Cir. 2005)). "The Sixth Circuit has generously

construed the Fourth Amendment as protecting nearly all overnight guests," Washington, 573 F.3d at 283, whether they are "renters, couch surfers, or nomads," Allen, 720 F. App'x at 257.

Nero seems to be of the "nomad" variety of overnight guests. Nero does not dispute that he was not an overnight guest at the Victory Inn on January 11, 2017. Nero Reply at 4. Nonetheless, he argues that the Victory Inn was his permanent residence until June 2016 after which he stayed at multiple locations, including the Victory Inn on occasion. Id. He argues that the Supreme Court's recent decision in Byrd supports his position that he had an expectation of privacy at the Victory Inn. The Court disagrees.

In Byrd, the defendant's girlfriend gave him permission to drive her rental car. 138 S. Ct. at 1524. The defendant, the sole occupant of the car, was later pulled over by a state trooper. Id. The trooper noted that the defendant's name was not on the rental agreement. Id. at 1525. The trooper concluded that because the defendant was not on the rental agreement, he did not have an expectation of privacy in the rental car. Id. The trooper proceeded to search the vehicle, which uncovered forty-nine bricks of heroin. Id. The Supreme Court vacated the lower court ruling denying the defendant's motion to suppress the evidence explaining that the defendant's expectation of privacy stemmed from his "lawful possession and control [of the vehicle] and the attendant right to exclude" others. Id. at 1528.

Here, unlike in Byrd, Nero was not in lawful possession and control of Room 201 on January 12, 2017. Indeed, he had not stayed at the Victory Inn in more than a week. When he did stay at the Victory Inn, Nero said that he typically stayed in Rooms 102, 103, and 109, that he did not stay with anyone else, and that Randol stayed in Room 201. Therefore, because he did not rent Room 201 on January 11, 2017, and he was not staying with Randol as a guest, he did not have a proprietary or possessory interest in Room 201. He has not established that he could

exclude anyone from Room 201 on the night of the search, and there is no indication that he took any precautions to maintain his privacy in Room 201. At most, based on his somewhat nomadic lifestyle, Nero may have had a subjective expectation that his belongings would not be searched at the Victory Inn. However, Nero's subjective expectations alone do not afford him Fourth Amendment protections in Room 201.

As noted above, in addition to his subjective expectations of privacy, Nero's expectation must also be objectively reasonable and one that "society is prepared to recognize as legitimate." Washington, 573 F.3d at 283. That is not the case here. Nero essentially abandoned his belongings at the Victory Inn, which inexplicably made their way into Room 201, a room Nero does not say that he ever stayed in. The Court finds that Nero's expectation of privacy in Room 201 is not objectively reasonable and not one society is prepared to recognize as legitimate. Accordingly, his motion is denied.

### III. CONCLUSION

For the reasons stated above, the Court denies Nero's to exclude evidence (Dkt. 218).

SO ORDERED.

Dated: August 16, 2019          s/Mark A. Goldsmith
   Detroit, Michigan             MARK A. GOLDSMITH
                                United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 16, 2019.

                                                                    s/Amanda Chubb
                                                                    Case Manager