UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 17-cr-20183-5

v

HON. MARK A. GOLDSMITH

D-5 HAROLD LASHAWN NERO,

    Defendant.

_____/

**OPINION & ORDER
DENYING DEFENDANT'S REQUESTS TO
REOPEN HIS DETENTION HEARING (Dkts. 423, 430)**

This matter is before the Court on Defendant Harold Lashawn Nero's notices of joinder in co-Defendants Darrick Bell's and Janette Gaggo Tafik's motions seeking pretrial release (Dkts. 423, 430). Nero seeks to reopen his detention hearing under 18 U.S.C. § 3142(f)(2) on the grounds that the risks associated with the COVID-19 pandemic constitute new and material evidence weighing in favor of his release. For the reasons that follow, Nero's requests are denied.

**I.  BACKGROUND**

A grand jury indicted Nero on nine charges stemming from his alleged role in an extensive human-trafficking and drug-distribution conspiracy at the Victory Inn hotel (the "Victory Inn") in Detroit, Michigan. Superseding Indictment (Dkt. 98). Nero initially consented to detention before the magistrate judge on June 30, 2017. See Consent Order (Dkt. 74). However, he thereafter filed a motion for revocation of the detention order. Def. Mot. for Revocation (Dkt. 174). After a hearing held on February 21, 2018, this Court found that consideration of all of the evidence, as well as the factors set forth under 18 U.S.C. § 3142(g), required detention. See United States v. Nero, No. 17-20183, 2018 WL 10075971, at *1 (E.D. Mich. Apr. 16, 2018). The Court concluded

that the Government had met its burden of proving that Nero presented a flight risk and a danger to the community such that "no condition or combination of conditions could reasonably assure the safety the community and his appearance in court." Id. at *6.

Nero thereafter filed a revised motion for revocation of the detention order. Def. Revised Mot. for Revocation (Dkt. 296). The Court declined to reopen the detention hearing under 18 U.S.C. § 3142(f)(2) on the ground that the new evidence presented was not sufficiently material to or persuasive regarding the issue of Nero's dangerousness. United States v. Nero, No. 17-20183, 2019 WL 6482415, at *2 (E.D. Mich. July 10, 2019). Nero now requests for the second time that this Court reopen his detention hearing and release him to home confinement.

## II. ANALYSIS

This Court has discretion in deciding whether to reopen a detention hearing under 18 U.S.C. § 3142(f)(2). See United States v. Watson, 475 Fed. App'x 598, 599-600 (6th Cir. 2012). The detention hearing may be reopened if (i) "information exists that was not known to the movant at the time of the hearing[;]" and (ii) that new information "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

Nero joins in co-Defendants Bell's and Tawfik's arguments that the emergence of the COVID-19 pandemic constitutes new and material information bearing on his health and physical condition, as relevant to the detention inquiry under § 3142(g)(3)(A). Thus, Nero maintains that his pretrial release is warranted in light of the health risks posed by continued incarceration during the pandemic. Id.

The Court is mindful of the exceptionally grave and unprecedented nature of COVID-19, which has continued to spread exponentially throughout the State of Michigan. And as

acknowledged by the Centers for Disease Control and Prevention ("CDC"), incarcerated individuals face an even greater risk of transmission, given the conditions frequently present in correctional and detention facilities.  See United States v. Kennedy, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020).  These conditions include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services.  Id.

While the generalized risks of COVID-19 cannot be disputed, courts have held that these risks, without more, do not amount to a "material change of circumstances warranting a renewed evaluation of [a] prior detention order." United States v. Dodd, No. 20-0016, 2020 WL 1547419, at *3 (D. Minn. Apr. 1, 2020) (collecting cases).  Rather, courts evaluating whether pretrial release is necessary must evaluate the particularized risks posed to an individual defendant. United States v. Lee, No. 19-20112, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020).  Some courts evaluating the impact of COVID-19 on the pretrial release calculus have considered the following four factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

United States v. Clark, No. 19-40068, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).  Although these factors have been applied in the context of motions for release under 18 U.S.C. § 3142(i), they are nevertheless relevant under the present procedural posture.[1]

---

[1] Subsection 3142(i) provides that a judicial officer may "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense

3

First, the § 3142(g) factors evaluated in the Court's opinion denying Nero's motion for pretrial release overwhelmingly demonstrate that he presents a danger to the community and a risk of flight, and that no condition or combination of conditions could reasonably assure the safety of the community and his appearance in court. Nero is alleged to have served as an "enforcer" in an extensive human-trafficking and drug-distribution conspiracy. Nero, 2018 WL 10075971, at *1. Surveillance video proffered by the Government documented "hundreds of drug transactions, widespread prostitution, [and] violence," and Nero directing the drug-related activities. Id. at *2. The Government's proffered evidence demonstrated that the conspirators, including Nero, employed violence, threats, degrading actions, and dangerous addictive drugs to coerce human trafficking victims into committing commercial sex acts. Id. at *4. According to witnesses, Nero would hit the victims to keep them "in check," and guarded them like prisoners while they prostituted themselves. Id. at *5. The Court also noted Nero's extensive criminal record, as well as the facts that he has violated probation eight times and committed crimes at least six times while on supervision. Id. Given the serious nature of the crimes alleged, Nero's capacity for violence, and his disregard for the conditions of parole and supervised release, this factor weighs decidedly in favor of his continued detention.

Second, Nero's health concerns are being addressed. Nero claims he suffers from rhabdomyolisis, a kidney condition that has led to two hospitalizations during his incarceration, as well as hypertension, chest pain, hypertrophic cardiomyopathy, and a mildly enlarged aorta. Def. Notice of Joinder in Tawfik Mot. at 1-2. However, Nero has not provided any evidence demonstrating that he is receiving inadequate medical care for his conditions. Indeed, Nero acknowledges and has proffered medical records indicating that he has received treatment through

---

or for another compelling reason."

a doctor's care and hospitalizations, as necessary. See Nero Medical Records, Ex. C to Def. Notice of Joinder in Tawfik Mot. (Dkt. 430-3). There is no reason to doubt that he will continue to receive such care. See United States v. Jones, No. 19-00249, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (denying motion for release under § 3142(i) because the defendant failed to demonstrate that his medical needs were not being addressed at the detention facility); see also United States v. Green, No. 19-85, 2020 WL 1493561, at *2 (W.D. Pa. Mar. 27, 2020) (same).

Nor has Nero demonstrated that he has been exposed to the virus as a result of his incarceration. To the contrary, the Government responds that Lieutenant Ryan McConnachie, of the Sanilac County Sheriff's Office, reports that no prisoners at Sanilac County Jail, where Nero is detained, have been diagnosed with COVID-19 as of March 30, 2020. Gov't Resp. at 7 (Dkt. 433).[2] Further, Sanilac has implemented a variety of precautions in an effort to reduce the risk of COVID-19 transmission within the prison. Sanilac, which is currently operating at 60% of its total housing capacity, is limiting its intake of new detainees to new arrests for violent crimes. Id. at 9. All new detainees are being medically screened for fever and other COVID-19 symptoms before entering the jail. Id. If a detainee's responses to screening questions raise concerns, or if a detainee exhibits any symptoms, that individual would be either evaluated by Sanilac's onsite medical staff or transported directly to a local hospital for medical clearance. Id. As a matter of course, new detainees are being isolated in quarantine for several days to further screen for development of COVID-19 symptoms. Id. Any detainee who does exhibit symptoms is quarantined for fourteen days. Id. Should any detainees develop COVID-19, the record reflects that Sanilac has the

---

[2] Sanilac reports that on March 14, 2020, one detainee had contact with a defense attorney who, Sanilac subsequently learned, previously had contact with a person later diagnosed with COVID-19. Gov't Resp. at 6 n.1. As a precaution, Sanilac placed the detainee in quarantine for fourteen days. Id. The detainee did not develop any symptoms or illness during those fourteen days and has since been removed from quarantine. Id.

capacity to address the illness, as it employs an onsite nurse and doctor. Id. at 7.

Further, Sanilac has ceased all visitation from family members and attorneys. Id. at 10. Staff members are screened daily with a questionnaire and temperature check and have been directed not to enter the facility if they feel sick. Id. Detainees have been provided with disinfectant spray to use within their cells, and jail personnel wipe down surfaces within the facility several times per day. Id. Finally, all social programming for detainees has been suspended. Id. Such measures are consistent with those recommended by the CDC. See Kennedy, 2020 WL 1493481, at *2. This Court has not discovered any press coverage contradicting the Government's representations regarding the conditions and precautions being implemented at Sanilac.[3] This factor, therefore, also weighs in favor of continued detention.

Third, Nero has not explained how his release would minimize his risk of contracting COVID-19. Indeed, Nero has not indicated where or with whom he would reside. He does not explain who else will reside at or frequent the home, or identify any COVID-19 precautions being implemented there. See United States v. Smoot, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020). In contrast, the record demonstrates that access to Sanilac is limited and strictly enforced, thereby minimizing Nero's potential exposure to the virus. See id. This factor weighs in favor of Nero's continued detention.

Finally, Nero's release to home confinement would increase the risk of others contracting COVID-19. As other courts have recognized, "'[a] defendant who is unable to comply with

---

[3] Indeed, Sanilac has worked with the courts and sheriff department to release as many inmates as possible without endangering the public. See Times Herald, available at https://www.thetimesherald.com/story/news/2020/04/02/st-clair-county-jail-reducing-inmate-population-during-coronavirus-pandemic/5110937002/ (last visited Apr. 6, 2020). Further, as of April 3, 2020, Sanilac County reported only ten cases of COVID-19. See Confirmed Cases By County, available at https://www.michigan.gov/coronavirus/0,9753,7-406-98163-520743--,00.html (last visited Apr. 6, 2020).

conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody.'" Id. (quoting Clark, 2020 WL 1446895, at *7); see also United States v. Aiad-Toss, No. 19-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020) (noting that releasing a defendant to home detention and electronic monitoring unduly burdens pretrial services officers, who must perform installation and monitoring). Additionally, Nero's release may increase the risk of infection to persons with whom he may reside. See Dodd, 2020 WL 1547419, at *3. Consequently, this factor likewise favors Nero's continued detention.

In sum, these factors do not demonstrate that Nero's pretrial release is warranted in light of the risks presented by the COVID-19 pandemic. Accordingly, although the emergence of COVID-19 constitutes new information, it does not have a material bearing on whether there are conditions of release that will reasonably assure Nero's appearance and the safety of the community.

### III. CONCLUSION

The Court finds that the new information presented by Nero does not have a material bearing on the issue of whether there are conditions of release that will reasonably assure his appearance in court and the safety of the community. Accordingly, Nero's requests for pretrial release (Dkts. 423, 430) are denied.

SO ORDERED.

Dated: April 6, 2020                       s/Mark A. Goldsmith
    Detroit, Michigan               MARK A. GOLDSMITH
                                                     United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 6, 2020.

                                              s/Karri Sandusky
                                              KARRI SANDUSKY
                                              Case Manager