UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

                Case No. 17-cr-20183-5

v

                HON. MARK A. GOLDSMITH

D-5 HAROLD LASHAWN NERO,

   Defendant.

_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO
REVOKE THE DETENTION ORDER (Dkt. 518)**

   This matter is before the Court on Defendant Harold Lashawn Nero's motion to revoke the detention order (Dkts. 518). Nero seeks revocation of the detention order under 18 U.S.C. § 3142(i) on the grounds of the health risks posed by the COVID-19 pandemic and because his continued incarceration has prevented him from adequately preparing his defense. Alternatively, Nero contends that the excessive length of his pretrial detention has risen to the level of a due process violation. For the reasons that follow, Nero's motion is denied.

## I. BACKGROUND

   A grand jury indicted Nero on nine charges stemming from his alleged role in an extensive human-trafficking and drug-distribution conspiracy at the Victory Inn hotel (the "Victory Inn") in Dearborn, Michigan. Superseding Indictment (Dkt. 98). Nero initially consented to detention before the magistrate judge on June 30, 2017 (Dkt. 74). However, he thereafter filed a motion for revocation of the detention order (Dkt. 174). After a hearing held on February 21, 2018, this Court found that consideration of all of the evidence, as well as the factors set forth under 18 U.S.C. § 3142(g), required detention. See United States v. Nero, No. 17-20183, 2018 WL 10075971, at

*1 (E.D. Mich. Apr. 16, 2018). The Court concluded that the Government had met its burden of proving that Nero presented a flight risk and a danger to the community such that "no condition or combination of conditions could reasonably assure the safety the community and his appearance in court." Id. at *6.

Nero thereafter filed a revised motion for revocation of the detention order (Dkt. 296). The Court declined to reopen the detention hearing on the ground that the new evidence presented was not sufficiently material to or persuasive regarding the issue of Nero's dangerousness. United States v. Nero, No. 17-20183, 2019 WL 6482415, at *2 (E.D. Mich. July 10, 2019). Most recently, Nero challenged his detention order on the ground that the COVID-19 pandemic constitutes new and material information bearing on his health and physical condition (Dkts. 423, 430). The Court denied Nero's requests for release, finding that he had not demonstrated that his pretrial release was warranted in light of the risks presented by the pandemic. United States v. Nero, No. 17-20183, 2020 WL 1672656, at *4 (E.D. Mich. Apr. 6, 2020).

Nero now challenges the detention order for a fourth time and requests that the Court release him to home confinement at a residential substance-abuse treatment center. Nero asserts that compelling reasons necessitate his temporary release under 18 U.S.C. § 3142(i)(4), and that the duration of his pretrial incarceration violates due process.

## II. ANALYSIS

### A. Compelling Reasons Warranting Release

When a detention order has been issued, 18 U.S.C. § 3142(i)(4) provides that a court may subsequently issue an order permitting "the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Although the statute does not define what constitutes a "compelling reason" for release, some courts have recognized that a defendant's heightened risk

of developing the more serious symptoms of COVID-19 can justify release. See, e.g., United States v. Kennedy, 449 F. Supp. 3d 713, 718 (E.D. Mich. 2020). Courts evaluating whether pretrial release is necessary under § 3142(i)(4) have considered the particularized risks posed to an individual defendant in accordance with the following four factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

United States v. Clark, 448 F. Supp. 3d 1152, 1157 (D. Kan. 2020).

Nero maintains that his release is warranted in light of certain medical conditions that place him at greater risk of developing severe symptoms of COVID-19. Mot. at 4-5, 10. Namely, Nero has submitted medical records establishing that he suffers from (i) a mildly enlarged aorta; (ii) cardiac issues including chest pain, hypertension, and possible hypertrophic cardiomyopathy; (iii) rhabdomyolysis, a kidney condition; (iv) constipation, abdominal bloating, hernias, and intermittent vomiting, for which he was referred to a general surgeon; and (v) obesity, with a Body Mass Index ranging between 39.73 and 43.30. Mot. at 4-5. The Centers for Disease and Control and Prevention have recognized that cardiac issues such as hypertension and cardiomyopathy, as well as obesity, can increase the risk of severe illness from COVID-19.[1]

The Court previously considered the first three medical conditions listed above and determined that they did not weigh in favor of Nero's release, as he failed to demonstrate that he was receiving inadequate medical care or that the jail was unequipped to address any positive COVID-19 cases. Nero, 2020 WL 1672656, at *3. The additional evidence regarding Nero's constipation, abdominal bloating, hernias, vomiting, and obesity does not alter these conclusions.

---

[1] https://perma.cc/LP6J-22Q8.

The medical records indicate that Nero has received treatment through a doctor's care, a referral to a surgeon, and hospitalizations, as necessary, and there is no reason to doubt that he will continue to receive such care. Although he was recently referred to a surgeon, the medical records do not indicate whether surgery is necessary. And even assuming that Nero requires surgery, he does not argue that his post-operative care would be deficient or otherwise explain why this would necessitate his release. Accordingly, Nero's medical conditions do not weigh in favor of his release. See United States v. Jones, No. 19-00249, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (denying motion for release under § 3142(i) because the defendant failed to demonstrate that his medical needs were not being addressed at the detention facility).

Nero also contends that his incarceration has impeded his ability to prepare for trial, given that in-person meetings with counsel have been suspended and that he has, at times, been unable to review video surveillance footage of the Victory Inn. Mot. at 14. While Nero contends that his trial preparation has been rendered more "inconvenient" as a result of pandemic-related restrictions, he does not argue that he has been prevented from effectively preparing a vigorous defense. Indeed, the record would undercut such an argument, given Nero's recent motions and other filings. Although the inability of counsel and client to meet in person is not ideal, there has been no claim that they are unable to communicate. Nor is there any indication that Nero's access to counsel would be greater if he was released from prison, as it would be equally hazardous for Nero and his attorney to meet in person outside of jail. See United States v. Cox, 449 F. Supp. 3d 958, 965 (D. Nev. 2020) (holding that a defendant's temporary release was not necessary for the preparation of his defense because limitations to visitation and communication would apply equally outside of jail). Thus, the Court concludes that Nero's ability to prepare his defense has not been significantly hindered such that his pretrial release is necessary.

Even assuming that Nero's medical concerns and access to counsel weigh in favor of his

4

pretrial release, the remaining factors weigh strongly against his release. With respect to the original grounds for Nero's detention, the Court previously held that the § 3142(g) factors overwhelmingly demonstrate that he presents a danger to the community and a risk of flight. Nero, 2020 WL 1672656, at *4. Nero has not rebutted these conclusions in the present motion. As described in greater detail below, Nero is alleged to have taken an active role in a pervasive human-trafficking and drug-distribution conspiracy. Given the serious nature of the crimes alleged, Nero's capacity for violence, and his extensive criminal record, this factor weighs decidedly in favor of his continued detention.

With respect to his proposed plan for release, Nero has not explained how his release would minimize his risk of contracting COVID-19. Nero proposes that he would be released to home confinement at a residential substance-abuse treatment center located in Detroit. Mot. at 15. While Nero's desire to receive substance-abuse treatment is commendable, he does not identify the number of other patients residing at the facility, or specify the COVID-19 precautions being implemented at the facility. In contrast, the Court has previously noted the strict precautionary measures being implemented at the jail, minimizing Nero's potential exposure to the virus. See United States v. Smoot, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020). This factor weighs in favor of Nero's continued detention.

Finally, Nero's release to a residential substance-abuse facility would increase the risk of others contracting COVID-19. As other courts have recognized, "'[a] defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody.'" Id. (quoting Clark, 448 F. Supp. 3d at 1161). Additionally, Nero's release may increase the risk of infection to other staff and patients at the facility. Consequently, this

factor likewise favors Nero's continued detention.

In sum, these factors do not demonstrate that Nero's pretrial release is warranted in light of the risks presented by the COVID-19 pandemic and his ability to prepare his defense.

### B. Due Process

Nero alternatively argues that the expected length of his pretrial incarceration violates due process. Nero has been in custody for 41 months, since the time of his arraignment on June 30, 2017. With a three-month trial scheduled to begin on May 24, 2021, Nero will have been in custody for approximately 50 months by the time trial concludes.

The Supreme Court has ruled that as a general matter, pretrial detention under the Bail Reform Act "is regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause." United States v. Salerno, 481 U.S. 739, 746-747 (1987). However, the court expressly stated that it "intimate[d] no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." Id. at 747 n.4. Consequently, it is well established within the Sixth Circuit that an excessive duration of pretrial detention can violate due process. United States v. Watson, 475 F. App'x 598, 601 (6th Cir. 2012). The Sixth Circuit evaluates four factors in determining whether pretrial detention is unconstitutionally excessive: "(1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which the detention was based." Id. The Court evaluates each of these factors in turn.

#### 1. Length of the Delay

With respect to the first factor, Nero maintains that his pretrial detention has been so lengthy as to become the dispositive factor of the analysis. Tawfik Mot. to Terminate Detention

Order at 10 (Dkt. 522).[2] Nero notes several opinions treating similar durations of pretrial detention as the governing factor in concluding that the defendants' continued incarceration violated due process. Id. at 7-10. For example, in United States v. Ojeda Rios, 846 F.2d 167, 169 (2d Cir. 1988), the Second Circuit ordered the defendant's release where he had been in custody for 32 months on charges of bank robbery and where trial was not anticipated to begin for several months. And in United States v. Omar, 157 F. Supp. 3d 707, 717 (M.D. Tenn. 2016), the court held that the defendant's pretrial incarceration of over four years amounted to a due process violation, even though the Government was not responsible for a substantial part of the delay and even though the defendant stood accused of sex-trafficking minors. Finally, in United States v. Rodriguez, No. 09-CR-331A, 2012 WL 6690197, at *1, 13 (W.D.N.Y. Dec. 21, 2012), the court held that where the defendant was charged with drug offenses, firearm possession, and racketeering, 50 months of pretrial detention, by itself, offended due process.

However, caselaw establishes that "the length of pretrial detention is not dispositive, and will, by itself, rarely offend due process." Watson, 475 F. App'x at 601 (citing United States v. El-Hage, 213 F.3d 74, 79 (2d Cir. 2000)). Instead, where pretrial detention is expected to last more than two years, "the length of detention prong of the due process analysis weighs strongly in favor of releas[e]," and it "follows that the other two prongs—government responsibility for delay and threats to the government's regulatory interests (flight/dangerousness)—will have to weigh strongly in favor of the government to justify continued detention." United States v. Ailemen, 165 F.R.D. 571, 591 (N.D. Cal. 1996); see also United States v. Briggs, 697 F.3d 98, 101 (2d Cir. 2012) ("The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to be deemed sufficient to justify the detention's

---

[2] In addition to filing his own motion, Nero has joined in and adopted the arguments set forth in Tawfik's motion to revoke her detention order. Nero Notice of Joinder (Dkt. 523).

continuance.").

While Nero's 41-month pretrial detention has been lengthy, it is not unprecedented. Other cases have upheld pretrial detentions of similar durations in the face of due process challenges. In United States v. Noble, No. 1:17-05, 2020 WL 3487845, at *5 (W.D. Pa. June 26, 2020), the court held that the balance of the factors favored continuation of the defendant's 41-month pretrial detention, given that the defendant was charged with serious drug trafficking offenses and had a history of violating the terms of court supervision. Similarly, in United States v. Flores, No. 2:14-cr-00684, 2018 WL 3530837, at *2 (C.D. Cal. July 20, 2018), the court held that a defendant's 43-month detainment, where the total detainment was expected to last for 52 months, did not violate due process. The court noted that the balance of the factors weighed in favor of detention, as the defendant was charged with serious racketeering and drug-trafficking offenses, the Government bore little responsibility for the delay, and the defendant's criminal history indicated multiple probation violations. Id. at *3.

Yet another court upheld a pretrial detention expected to last for 55 months, where the defendant was charged with various offenses including racketeering, murder in aid of racketeering, and a drug-trafficking conspiracy. United States v. Speed, No. 09–CR–329, 2013 WL 6531950, at *5 (W.D.N.Y. Dec. 12, 2013). Although the length of detention weighed in favor of the defendant's release, the remaining factors strongly favored the defendant's continued detention. Id. at *4. Nevertheless, the court noted that "there could come a point, in the near future, where the length of detention alone warrants reconsideration of defendant's request." Id. at *5; see also United States v. Robinson, No. 10–CR–239S, 2014 WL 2207970, at *4 (W.D.N.Y. May 28, 2014) (continuing a pretrial detention of over 40 months without prejudice to renewal of the motion in six months on due-process grounds). In light of this authority, while the length of Nero's pretrial incarceration weighs in favor of his release, it is not dispositive of the matter. Thus, the Court

8

proceeds to evaluate the remaining factors.

### 2. Responsibility for the Delay

Turning to the parties' relative contributions to the delay, it does not appear that the Government is at fault for prolonging the proceedings. Nero was arraigned on June 30, 2017, and a superseding indictment was promptly filed on August 23, 2017. By December 5, 2017, the parties, including Nero, stipulated to a schedule whereby the Government was to produce lists of video segments ("Review Lists") that it intended to introduce at trial from among the approximately 15,000 hours of video surveillance from the Victory Inn. 12/5/17 Stipulation & Order (Dkt. 171). While the stipulated order provided that Review Lists would be produced on February 14, 2018, and May 14, 2018, with additional productions continuing every 90 days as necessary, Nero faults the Government for producing additional lists after those dates. Tawfik Mot. to Terminate Detention Order at 11. However, the stipulated order expressly stated the parties' recognition that May 14, 2018 was not a "cut-off," and that the Government was not precluded from providing additional Review Lists as it completed its review. 12/5/17 Stipulation & Order at 3. Additionally, Defendants, including Nero, agreed to a final production of the Review Lists by February 14, 2019. See 9/6/18 Stipulation (Dkt. 206).

Nero contends that technical issues with discovery and the Government's decision to indict him before it sufficiently reviewed the evidence resulted in delays in reviewing discovery. Mot. at 7-8; Tawfik Mot. to Terminate Detention Order at 11. The Court has previously rejected this argument on multiple occasions. See 6/28/18 Order at 3 (Dkt. 200); 2/5/19 Order at 3-4 (Dkt. 273); 11/20/19 Order at 3-4 (Dkt. 373); 6/11/20 Order at 5-6 (Dkt. 487). The delay is not attributable to any pre-indictment lethargy by the Government, and there is no indication that the Government failed to diligently review the surveillance video or to compile the Review Lists. As described above, the Government has timely produced discovery in accordance with an agreed-

9

upon schedule and has responded to a variety of pretrial motions, including several filed by Nero.

In fact, at least two years of the delay is attributable to the Defendants' need to review the discovery materials. The parties initially agreed that Defendants' review would be confined to those portions of the surveillance video that the Government intended to use at trial. See Joint Statement Regarding Discovery at 2 (Dkt. 184). However, Defendants later expanded their review to the entirety of the surveillance video, on the theory that the video may contain exculpatory evidence. Given their need for additional time to review the voluminous amount of discovery, Nero's co-Defendants repeatedly stipulated over the course of two years to a series of continuances through September 9, 2020. See 12/5/17 Stipulation & Order at 3-4; 2/1/19 Stipulation & Order at 2 (Dkt. 272); 2/1/19 Pruitt Stipulation & Order at 2 (Dkt. 290); 11/7/19 Stipulation & Order at 3 (Dkt. 368). Although Nero did not stipulate to continuances beyond May 23, 2018, the Court held that those continuances have been warranted to afford Nero and the other Defendants time to review the many hours of video and to adequately prepare for trial. 6/28/18 Order at 3; 2/5/19 Order at 3-4; 11/20/19 Order at 3-4; 6/11/20 Order at 5-6. While the Court does not fault Defendants for their legitimate desire to fully review the surveillance video, it likewise does not fault the Government for this delay.

For the past nine months, the proceedings have been delayed as a result of restrictions imposed by the Court in response to the COVID-19 pandemic. Since March 25, 2020, the Court has remained closed to the public. It has indefinitely postponed in-court proceedings, including trials, given the impairment of counsel to prepare for trial, the "reduced ability to obtain an adequate spectrum of jurors," and recommendations from public health organizations to limit the presence of counsel and court personnel in the courtroom. Administrative Order 20-AO-039; see also Administrative Order 20-AO-038 (revised) ("Jury trials will commence on a date yet to be determined, and then only for critical criminal trials."). It is uncertain when the Court will reopen

to personnel or the public, let alone when jury trials will resume. Accordingly, the Court has held that it is unable to hold a jury trial in a manner that promotes public safety until, at the earliest, May 2021.

Other courts confronted with the issue have held that delays occasioned by the pandemic have not violated due process and are not attributable to the Government. See, e.g., United States v. Bradley, No. 3:16-cr-50008, 2020 WL 6703802, at *4 (W.D. Va. Nov. 13, 2020) (holding that the prosecution was not responsible for pretrial delays attributable to the logistical challenges surrounding travel during the pandemic); United States v. Shipp, No. 19-CR-29, 2020 WL 3642856, at *3 (E.D.N.Y. July 6, 2020) (holding that a pretrial detention expected to last for 20 months did not offend due process "when viewed in light of the extenuating circumstances of the COVID-19 pandemic and the danger Mr. Shipp poses to the community"). Likewise, this Court finds that neither Government counsel nor the defense is responsible for the pandemic-related delay between March 25, 2020 and the new trial date of May 24, 2021.

Ultimately, the extended period of pretrial delay in this matter is the product of the defense's legitimate desire to review an extraordinary amount of material, coupled with an unprecedented and unforeseeable pandemic that has overwhelmed and interfered with every sphere of human activity—with the administration of justice as no exception. This confluence of events occurred through no fault of Government counsel. Accordingly, this factor is neutral with respect to Nero's continued detention.

### 3. Gravity of the Charges & Strength of the Evidence

The final two factors of the due process analysis overwhelmingly weigh in favor of Nero's continued detention. Nero is charged with a variety of serious offenses related to his alleged role as an "enforcer" in a violent and extensive drug-distribution and sex-trafficking conspiracy. Nero, 2018 WL 10075971, at *1. These offenses carry stiff penalties, including mandatory sentences of

15 to 20 years, and up to life in prison. And the evidence of Nero's dangerousness to the community is strong. Surveillance video documents "hundreds of drug transactions, widespread prostitution, [and] violence," and Nero is visible participating in drug-related activities and walking past an overdosing victim. Id. at *2. Further, the evidence demonstrates that the conspirators, including Nero, employed threats, violence, and degrading acts, as well as administered dangerous, addictive drugs, to coerce human trafficking victims into committing commercial sex acts. Id. at *4. According to witnesses, Nero hit the victims to keep them "in check," and guarded them like prisoners while they prostituted themselves. Id. at *5.

Nero's criminal history further supports a finding that he poses a danger to the community and a risk of flight. The Court has previously described Nero's extensive criminal record:

> Nero has at least 10 convictions, including at least seven for controlled substances. He has violated probation eight times and committed crimes at least six times while on supervision. He was arrested several other times between 2010 and 2014 (including for armed robbery).

Id. Additionally, Nero was on probation at the time of his alleged involvement in the presently-charged conspiracy. Id. On top of this, Nero evaded arrest on the present charges for three months by concealing his identity and whereabouts, with assistance from his family and friends. Id. at 4-5. Given the strength of the evidence demonstrating Nero's alleged role in a particularly egregious conspiracy to distribute drugs and force women into prostitution, as well as Nero's long criminal record, poor record of complying with the terms of probation, and history of evading arrest, these final two factors overwhelmingly favor Nero's continued detention.

Nero relies heavily on the Sixth Circuit's unreported decision in United States v. Nagi, No. 09-1995 (6th Cir. Dec. 14, 2009), in arguing that due process compels his release. Mot. at 7-8; Tawfik Mot. to Terminate Detention Order at 3-4. In that case, the Sixth Circuit held that due process compelled Nagi's release, where he had been detained for more than three years, and where

the Government bore some responsibility for a two-year delay between Nagi's arrest and a superseding indictment. Nagi, No. 09-1995, slip op. at 3. The court further reasoned that while the racketeering charges against Nagi were serious, they did not include the conspiracy to commit murder charges faced by some co-defendants who remained free on bond. Id. Further, the flight risk and danger posed to others by Nagi's release could be mitigated through surrender of his passport, house arrest, and electronic tether. Id.

The present case, however, is distinguishable from Nagi. Here, as discussed above, the Government is not responsible for any part of the delay. And unlike Nagi, Nero faces charges equally as serious as his co-defendants, the majority of whom are also detained. Finally, there was no indication in Nagi that the defendant had a history of evading arrest. Indeed, given Nero's involvement in a violent organization, the Court has previously rejected the argument that electronic monitoring would reasonably assure Nero's appearance or that he would forego activities that pose a danger to the community. Nero, 2018 WL 10075971, at *6. Nero's reliance on Nagi is, therefore, unavailing.

Ultimately, although the length of Nero's pretrial detention weighs heavily in favor of his release, the gravity of the charged offense and the strength of the evidence of Nero's dangerousness and risk of flight weigh even more heavily in favor of his continued detention. Additionally, the worldwide pandemic represents a circumstance outside the parties' control preventing the Court from proceeding to trial until, at the earliest, May 2021. Nevertheless, the Court is troubled that Nero has been in pretrial custody for a prolonged period of time and does not rule out the possibility that there could come a point where the length of detention warrants his release. Accordingly, Nero's motion to revoke the detention order is denied without prejudice to his ability to renew his motion should trial not begin by May 2021.

## III.  CONCLUSION

The Court finds that Nero has not established compelling reasons justifying his release and that his pretrial incarceration does not violate due process.  Accordingly, Nero's motion to revoke the detention order is denied without prejudice to his ability to renew the motion should trial not begin by May 2021.

SO ORDERED.

Dated: December 11, 2020              s/Mark A. Goldsmith
Detroit, Michigan                     MARK A. GOLDSMITH
                                      United States District Judge