UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                Case No. 17-cr-20183-5

v

                                HON. MARK A. GOLDSMITH

D-5 HAROLD LASHAWN NERO,

      Defendant.

_____/

## OPINION & ORDER
## DENYING DEFENDANT'S REQUEST TO
## REVOKE THE DETENTION ORDER (Dkt. 565)

This matter is before the Court on Defendant Harold Lashawn Nero's request to revoke the detention order, as set forth in his response opposing the Government's motion for a continuance (Dkt. 565). First, Nero seeks revocation of the detention order under 18 U.S.C. § 3142(i), arguing that the health risks posed by the COVID-19 pandemic and his inability to prepare his defense constitute compelling reasons justifying his release. Second, Nero contends that the excessive length of his pretrial detention has risen to the level of a due process violation. For the reasons that follow, Nero's request is denied.

## I. BACKGROUND

As the Court has previously described the factual background of the case in detail in other opinions, it need not do so again for purposes of the present motion. See, e.g., 7/15/19 Op. (Dkt. 306) (denying Defendant Ford's motion for bond). In relevant part, a grand jury indicted Nero on nine charges stemming from his alleged role in an extensive human-trafficking and drug-distribution conspiracy at the Victory Inn hotel in Detroit, Michigan. Superseding Indictment (Dkt. 98).

Until recently, trial in this matter was scheduled to commence on May 24, 2021.  On February 17, 2021, all defendants except for Nero and Janette Gaggo Tawfik stipulated to adjourn trial until October 4, 2021.  See 2/17/21 Stipulation & Order (Dkt. 564).  The Court granted a continuance, citing the impossibility of safely conducting a months-long jury trial during the COVID-19 pandemic and while the courthouse remains closed to the public.  Id.; 3/1/21 Order at 3 (Dkt. 569).  In his brief opposing adjournment of the trial, Nero sought pretrial release and renewed his arguments that his health and inability to prepare his defense constitute compelling circumstances justifying his release and that that the length of his pretrial incarceration violates due process.

## II.  ANALYSIS

### A.  Compelling Reasons Warranting Release

When a detention order has been issued, 18 U.S.C. § 3142(i)(4) provides that a court may subsequently issue an order permitting "the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  Although the statute does not define what constitutes a "compelling reason" for release, some courts have recognized that a defendant's heightened risk of developing the more serious symptoms of COVID-19 can justify release.  See, e.g., United States v. Kennedy, 449 F. Supp. 3d 713, 718 (E.D. Mich. 2020).

Nero maintains that his release is warranted in light of certain medical conditions that place him at risk of developing the more severe symptoms of COVID-19.  Nero Br. at 17-21.  On at least two prior occasions, the Court considered Nero's medical conditions and determined that they did not compel his release.  4/6/20 Op. at 4-6 (Dkt. 439); 12/11/20 Op. at 3-4 (Dkt. 542).  In his brief, Nero has not demonstrated a material change in his health since the Court last considered the issue

in its opinion entered on December 11, 2020 (the "December 11 Opinion").  Accordingly, the Court finds that his release is not warranted for the same reasons articulated in that opinion.

Nero also contends that his incarceration has impeded his ability to prepare for trial, as in-person meetings with counsel have been suspended at the jail where he is detained.  Nero Br. at 22-23.  Again, the Court previously rejected that argument, finding that while Nero's trial preparation might be rendered more inconvenient, he has not been prevented from preparing a vigorous defense.  12/11/20 Op. at 4.  Because Nero has not shown a change in these circumstances in his renewed request for pretrial release, the Court again rejects this argument for the reasons set forth in its December 11 Opinion.

### B. Due Process

Nero also argues that the expected length of his pretrial incarceration violates due process. Although pretrial detention ordinarily is not considered punitive and does not offend due process, an excessive duration of pretrial detention can violate due process.  United States v. Watson, 475 F. App'x 598, 601 (6th Cir. 2012).  The Sixth Circuit evaluates four factors in determining whether pretrial detention is unconstitutionally excessive: "(1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which the detention was based."  Id.

In its December 11 Opinion, the Court weighed these factors in addressing Nero's due process argument.  The Court expressed concern regarding the lengthy duration of Nero's pretrial incarceration and found the first factor weighed in favor of his release.  12/11/20 Op. at 8, 9, 13. Nevertheless, the Court noted that the length of Nero's pretrial detention was not unprecedented and that, standing alone, it did not mandate release where the other factors weighed strongly in favor of continued detention.  Id. at 7-8.  With respect to the cause for the delay, the Court determined that neither party was at fault, as the delay was the product of defense counsel's

3

"legitimate desire to review an extraordinary amount of material" and of an unprecedented, worldwide pandemic.  Id. at 11.  Finally, the Court determined that the gravity of the charges and strength of the evidence overwhelmingly favored Nero's continued detention.  Id. at 11-12.

At this stage of the proceedings, nothing has changed to impact the Court's analysis of these factors except for the anticipated duration of time Nero will have been in custody before trial begins.  The Court, therefore, confines its analysis to the duration of Nero's pretrial incarceration and adopts its previous findings with respect to the remaining factors.

At the time of the December 11 Opinion, Nero had been detained for 41 months and was expected to be in custody for 50 months by the time trial concluded.  To date, Nero has been in custody for nearly 45 months.  With a three-month trial scheduled to begin on October 4, 2021, Nero will have been in custody for 51 months when trial begins and 54 months by the time trial concludes.

Nero contends that durations of 14 to 16 months of pretrial incarceration violate due process.  See Nero Br. at 12.  It is true that some courts have noted that "in many, perhaps most, cases, sixteen months would be found to exceed the due process limitations on the duration of pretrial confinement."  E.g., United States v. Zannino, 798 F.2d 544, 548 (1st Cir. 1986).  For example, in United States v. Gonzales Claudio, 806 F.2d 334, 336 (2d Cir. 1986), two defendants with ties to a paramilitary terrorist organization were charged with an armed robbery netting $7.6 million.  The defendants had been detained for 14 months and were expected to remain in pretrial custody for a total of 26 months through the end of trial.  Id. at 341.  The Second Circuit found that the Government bore some responsibility for a portion of the delay in proceeding to trial, given its sluggish production of discovery.  Id. at 342.  Although the appellate court accepted the district court's finding that the defendants posed a flight risk, it determined that the evidence did "not establish that risk to a degree sufficient to render continued detention within constitutional limits."

4

Id. at 343.  Accordingly, the Second Circuit vacated the district court's detention order.  Id.

As discussed in the Court's December 11 Opinion, however, Nero's 45-month pretrial detention is not unprecedented.  The Court noted other cases in which courts have found that pretrial detentions of similar durations did not violate due process where the other factors heavily favored continuing detention.  12/11/20 Op. at 8 (referencing United States v. Noble, No. 1:17-05, 2020 WL 3487845, at *5 (W.D. Pa. June 26, 2020) (41-month pretrial detention did not violate due process); United States v. Flores, No. 2:14-cr-00684, 2018 WL 3530837, at *2 (C.D. Cal. July 20, 2018) (43-month pretrial detention expected to last for a total of 52 months did not violate due process); United States v. Robinson, No. 10–CR–239S, 2014 WL 2207970, at *4 (W.D.N.Y. May 28, 2014) (continuing a pretrial detention of over 40 months without prejudice to renewal of the motion for release in six months on due-process grounds); United States v. Speed, No. 09–CR–329, 2013 WL 6531950, at *5 (W.D.N.Y. Dec. 12, 2013) (55-month pretrial detention did not offend due process)).

Nero argues that these cases are distinguishable on the ground that they involved defendants who bore responsibility for the pretrial delay.  Nero Br. at 15-16.  For example, the defendant in Noble filed extensive pretrial motions while proceeding pro se, 2020 WL 3487845, at *5, while the defendant in Flores declined to enter a guilty plea after signing a plea agreement and either fired or moved to terminate four of his attorneys, 2018 WL 3530837, at *3.  And in Speed, a delay of ten months was found to be attributable to resolution of the defendant's motion to recuse the entire United States Attorney's Office for the Western District of New York.  2013 WL 6531950, at *2.

But a defendant's responsibility for causing delay is just one of the factors to be balanced in evaluating whether the duration of pretrial detention offends due process.  Here, the Court found that the gravity of the charges and strength of the evidence overwhelmingly justified Nero's

continued detention. Thus, the fact that the defendants in <u>Noble</u>, <u>Flores</u>, and <u>Speed</u> were responsible for causing the pretrial delay does not impact the Court's analysis of the factors in the present case. In any event, some of the pretrial delay is, in fact, attributable to Nero—although the Court does not fault Nero, he has increased the complexity of the case by filing five pretrial motions (Dkts. 343, 380, 381, 382, 516).

Next, Nero again relies on the Sixth Circuit's unreported decision in <u>United States v. Nagi</u>, No. 09-1995 (6th Cir. Dec. 14, 2009), in arguing that due process compels his release. Nero Br. at 12-15. The Court previously considered <u>Nagi</u> and found it to be distinguishable from the present action. 12/11/20 Op. at 12-13. Because Nero has not advanced any new argument with respect to <u>Nagi</u>, the Court rejects Nero's reliance on that case for the reasons articulated in its December 11 Opinion.

Finally, Nero challenges the Court's finding that delays occasioned by the pandemic are not attributable to the Government. Nero Br. at 13-14. Nero contends that the Government and this Court are at fault for failing to provide safe conditions that would permit trial to go forward— for example, by sequestering jurors in hotel rooms. <u>Id.</u> But the fact remains that the courthouse is still closed to the public, and all trials have been indefinitely postponed. Administrative Order 20-AO-039; <u>see also</u> Administrative Order 20-AO-038 (revised) ("Jury trials will commence on a date yet to be determined, and then only for critical criminal trials."). The undersigned is bound by these administrative orders and lacks the authority to unilaterally lift them. Nor does Nero's vague suggestion of sequestering jurors adequately address the public health concerns posed by convening in one courtroom nine defendants, numerous witnesses, court personnel, and multiple attorneys for each defendant. The Court, therefore, rejects Nero's assertion that the Government and the Court bear responsibility for the pretrial delay caused by the COVID-19 pandemic.

### III.  CONCLUSION

For the reasons discussed above, the Court denies Nero's request to revoke the detention order (Dkt. 565).

SO ORDERED.

Dated: March 25, 2021                         s/Mark A. Goldsmith
      Detroit, Michigan                         MARK A. GOLDSMITH
                                        United States District Judge