UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                           Criminal Action No. 17-20183

vs.

                                                            HON. MARK A. GOLDSMITH

D-5 HAROLD LASHAWN NERO,

       Defendant.
_____/

**OPINION & ORDER
GRANTING IN PART DEFENDANT NERO'S MOTION IN LIMINE TO COMPEL
PRODUCTION OF WITNESS INFORMATION (Dkt. 809)**

Defendant Harold Lashawn Nero is currently on trial for his alleged role in sex and drug trafficking conspiracies at the Victory Inn in Detroit, Michigan. This matter is before the Court on Nero's motion in limine to compel the production of witness information (Dkt. 809). Specifically, Nero seeks an order requiring the Government to disclose the identity of an informant who told a federal agent that he "believed Harold Lashawn Nero was not involved in the operation" at the Victory Inn. Resp. at 1 (Dkt. 814). In the Government's response, it correctly observed that before ordering disclosure of an informant's identity, courts traditionally utilize in camera reviews to assess the relevance and possible helpfulness of an informant's identity to the defense. United States v. Sharp, 778 F.2d 1182, 1187 (6th Cir. 1985). The Court ordered the Government to file under seal the information that it wished for the Court to consider in camera (Dkt. 819). The Government did so, producing a report containing an agent's documentation of an interview with the informant (Dkt. 823). Nero filed a reply to the Government's production of the in camera

material (Dkt. 824).[1] The Government filed a supplemental brief (Dkt. 827) and Nero filed a response to the supplemental brief (Dkt. 833). Having conducted an in camera review of the proffered information, the Court grants in part Nero's motion. Because the informant is in the process of obtaining counsel, rather than ordering the Government to disclose the informant's identity to Nero, the Court orders Nero's counsel to confer with the informant's counsel.

## I. ANALYSIS

The Court addresses in turn the timeliness of Nero's motion and its merits.

### A. Timeliness

Because Nero filed the instant motion after the pretrial motions deadline, the Court must consider whether Nero has shown "good cause" for the motion's untimeliness. Fed. R. Crim. P. 12(c)(3). Nero contends that the Government recently made a large pretrial production of evidence, which included the statement of the informant to a federal agent about the alleged criminal conspiracies in this case. Mot. at 3. Defense counsel attempted to obtain information about the individual from the Government, but the Government "refused to either call that witness or produce any information to identify him[]." Id. This motion followed.

Nero has shown good cause for the untimeliness of his filing. Nero did not receive information about the informant until after the pretrial motions deadline had passed. He, therefore, could not have filed the motion before the deadline passed. Further, although defense counsel could have acted more expeditiously, he filed this motion within two weeks of discovering the informant's existence. Accordingly, the Court proceeds to consider the merits of Nero's motion.

---

[1] Nero's counsel, Mark Magidson, filed this reply under seal, without the Court's permission. Generally, documents may not be filed under seal except by Court order. E.D. Mich. LR 5.3(b). For the sake of efficiency, the Court will consider Nero's sealed reply in resolving his motion. But going forward, Magidson must follow the procedures set forth in Local Rule 5.3(b) to file documents under seal.

**B. Merits**

The Government may—as it has here—invoke the so-called "informer's privilege" to withhold certain information from disclosure, including an informant's identity. Roviaro v. United States, 353 U.S. 53, 59–60 (1957). Because this privilege is limited by the "fundamental requirements of fairness," id. at 60, "information about a confidential informant (or the informant's testimony itself) may be admitted if the revealing evidence 'is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause,'" United States v. Sierra-Villegas, 774 F.3d 1093, 1098 (6th Cir. 2014) (quoting Roviaro, 353 U.S. at 60–61). The decision to order disclosure is ultimately left to Court's sound discretion and will depend on "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 62.

The Government contends that disclosure of the informant's identity is unwarranted because "'the possible relevancy of [the] . . . informant's identity is based on mere conjecture or supposition.'" Resp. at 3 (quoting United States v. Mills, No. 16-CR-20460, 2019 WL 77034, at *4 (E.D. Mich. Jan. 2, 2019) (punctuation modified)). According to the Government, the relevancy of the informant's identity is conjectural because the informant state that he "*believed* Harold Lashawn Nero was not involved in the operation." Id. (punctuation modified, emphasis in original). The Government likens this case to Mills, in which this Court held that a defendant was not entitled to disclosure of an informant's identity where the defendant "merely suggest[ed] that disclosure would enable the defense to speak with the informants, which would in turn lead to exculpatory evidence, and that disclosure would substantially assist the defense and is essential to a fair trial." Mills, 2019 WL 77034, at *4 (punctuation modified).

3

The Court disagrees with the Government. Unlike in Mills, Nero's claim—that disclosure of the informant's identity is warranted because the informant could provide exculpatory testimony—is grounded in fact rather than mere conjecture. The report produced by the Government indicates that the informant provided information to an agent about the drug and sex trafficking operations at the Victory Inn. This information included the roles of certain alleged coconspirators in the operations. It recited numerous specific facts within the informant's knowledge regarding the operations, reflecting detailed familiarity with them. Armed with this knowledge, the informant stated that he "believed Harold Lashawn Nero was not involved in the operation." Resp. at 1.

The word "believed" might indicate the informant's lack of complete certainty, but it does not—as the Government maintains—render the potential relevancy of the informant's identity mere speculation. Further, the informant stated that he believed that Co-Defendant Bryant Daugherty was Co-Defendant Darrick Bell's enforcer, which, as Nero states, "contradict[s] the [G]overnment's theory at trial that Nero is Bell's enforcer." Reply at 8. The informant's statements are, therefore, "relevant and helpful" to Nero's defense, as they tend to exculpate him. See Sierra-Villegas, 774 F.3d at 1098 (punctuation modified). The Court will, therefore, permit appropriate access to the informant, as outlined below.

One further point bears discussion. The Government states that it told the informant that he may need counsel and it represents that the informant "is in the process of securing counsel through the Federal Community Defender." In Camera Br. at 6; Gov't Supp. Br. at 1. Nero argues that the Government's direction to the informant to obtain counsel "obstruct[s] Nero's access to exculpatory evidence," because the informant will "presumably assert a Fifth Amendment right to remain silent or refuse to testify." Reply at 9. Nero asks that, if the Government threatens to indict

the informant for testifying at trial, "this Court should require the government to grant the [informant] immunity for his/her testimony." Id. In the same breath, Nero acknowledges that the United States Court of Appeals for"[t]he Sixth Circuit has held that a district court is without authority to grant immunity to a witness who asserts the Fifth Amendment privilege against self-incrimination, or to force the [G]overnment to grant immunity." Id. at 9–10 (citing United States v. Talley, 164 F.3d 989, 997 (6th Cir. 1999)). However, Nero contends that in "'limited situations'" such as this, "'the [G]overnment's selective grant of immunity to its own witnesses, while denying immunity to the [informant]'" would "'deprive the defense of a fair trial, and . . . require a judicially compelled immunity grant [to the informant].'" Id. (quoting Talley, 164 F.3d at 997). Nero also suggests that judicially-compelled immunity is appropriate here because the Government engaged in misconduct by advising the informant that he may need counsel. Id. at 10.

The fact that a witness decides to invoke his or her Fifth Amendment right not to testify does not deny a defendant a fair trial. United States v. Stapleton, 297 F. App'x 413, 430 (6th Cir. 2008). Moreover, prosecutors have significant discretion in determining whether to grant a witness immunity, and separation of powers principles prevent a court from either granting immunity to a witness or ordering the prosecution to do so. See Pillsbury Co. v. Conboy, 459 U.S. 248, 261 (1983) ("No court has authority to immunize a witness."); Talley, 164 F.3d at 997 (explaining that judicially-compelled immunity would "raise separation of powers concerns because the decision of whom to prosecute is soundly within the discretion of the prosecutor, not the courts," and would "force courts to place the [G]overnment in the undesirable position of choosing whether to prosecute the defendant or the witness"). The Sixth Circuit has "discussed, but has not accepted," two limited circumstances in which a district court might have authority to grant immunity to a

5

witness. Dent. v. Bergh, No. 14-cv-13272, 2017 WL 4038879, at *11 (E.D. Mich. Sept. 13, 2017) (citing United States v. Emuegbunam, 268 F.3d 377, 401 & n.5 (6th Cir. 2001); Talley, 164 F.3d at 997–998). First, where the Government has engaged in misconduct. Id. Second, where (i) a defense witness possesses exculpatory testimony that is essential to an effective defense and that strongly outweighs the Government's interest in declining to offer immunity and (ii) the Government grants immunity to its own witnesses but denies immunity to the defense witnesses. Id.

Relief under the first theory is "not [to] be granted lightly." United States v. Mohney, 949 F.2d 1397, 1402 (6th Cir. 1991). Nero has not shown that this is a rare situation warranting relief, as he has offered no proof of prosecutorial misconduct. Rather, Nero has merely alleged that the Government "obstruct[ed]" Nero's access to exculpatory evidence by advising the informant that he may need counsel. But, as the Government points out, it is proper for a prosecutor to advise a witness when the prosecutor believes that the witness may be the subject of a criminal prosecution. Gov't Supp. Br. at 4 (citing Davis v. Straub, 430 F.3d 281 (6th Cir. 2005) (stating that the ABA's model guidelines require prosecutors to "advise a witness who is to be interviewed of his or her rights against self-incrimination and the right to counsel whenever the law so requires" and also stating that it "proper for a prosecutor to so advise a witness whenever the prosecutor knows or has reason to believe that the witness may be the subject of a criminal prosecution") (citing the ABA Standards for the Administration of Criminal Justice § 3–3.2(b))). Thus, the Government committed no misconduct by telling the informant that Nero is seeking disclosure of the

informant's identity, that the informant may be the subject of a criminal prosecution, and that the informant may need counsel.[2]

Even assuming that the second theory provides Nero an avenue for seeking judicially-compelled immunity for the informant, such relief would be premature here. Nero has not established—and it is currently unknown—whether he will call the informant as a witness, whether the informant will invoke the Fifth Amendment, and whether the Government will decline to grant immunity to the informant. Accordingly, the Court presently denies Nero's request for the Court to grant immunity to the informant. Nero may re-raise this request, if appropriate, at a later time.

## II. CONCLUSION

For the foregoing reasons, Nero's motion in limine to compel the production of witness information (Dkt. 809) is granted in part. Because the informant is in the process of obtaining counsel, at this point, pursuant to Michigan Rule of Professional Conduct 4.2(a), the Court orders that Nero's counsel confer with the informant's counsel regarding this matter. That conference may obviate the need for any further relief from the Court. If not, the Court grants Nero leave to file under seal a supplemental memorandum requesting further relief.

SO ORDERED.

Dated: April 22, 2022             s/Mark A. Goldsmith
    Detroit, Michigan           MARK A. GOLDSMITH
                                  United States District Judge

---

[2] In his response to the Government's supplemental brief, Nero also suggests that the Government acted unethically by not disclosing the report containing the informant's statement in 2017 when the statement was made. Def. Resp. to Gov't Supp. Br. at 3. But Nero was not entitled to immediate disclosure of the report. Rather, the Government was required to disclose Brady material not covered by the Jencks Act approximately two months before trial, 12/20/21 Order (Dkt. 717), and all remaining discovery, including Jencks material, approximately two weeks before trial, 3/16/22 Order (Dkt. 760).