UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

No. 17-cr-20183

Plaintiff,                          HON. MARK A. GOLDSMITH

v.

D-5   HAROLD LASHAWN NERO,

Defendant.

_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT NERO'S
MOTION FOR JUDGMENT OF ACQUITTAL [ECF No. 933]**

## I.     Introduction

Following a lengthy jury trial where the jury failed to reach a

verdict on multiple counts, Defendant Harold Nero asks this Court for a

judgment of acquittal pursuant to Rule 29 of the Federal Rules of

Criminal Procedure. Because there was substantial evidence

establishing all the elements of the charged offenses, Nero's motion

should be denied.

## II.    Rule 29 Standard

Evidence is sufficient to sustain a conviction if, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, any rational trier of fact could find the elements of the crime beyond a reasonable doubt. *United States v. Driver,* 535 F.3d 424, 428-29 (6th Cir. 2008). In examining claims of insufficient evidence, a court should not weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury. *Id.* As the Sixth Circuit has observed, "defendants bear a heavy burden when asserting insufficiency of the evidence arguments." *United States v. Wettstain,* 618 F.3d 577, 583 (6th Cir. 2010). That is because "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt," and "the uncorroborated testimony of an accomplice alone may support a conviction." *Id.*

## III.   Nero Cannot Satisfy Rule 29

Nero argues that he should be acquitted under Rule 29 of all the hung counts. But Nero ignores the substantial trial evidence that would

support his conviction for the charged offenses. Each of his arguments is addressed in turn.

## A.    Sex Trafficking Counts

### *Count One*

Count One charged Nero with Sex Trafficking Conspiracy and Aiding and Abetting in violation of 18 U.S.C. §§ 1594(c); 2. The Sex trafficking conspiracy instruction has two elements:

"For you to find either of the defendants guilty of the conspiracy charge, the government must prove each and every one of the following elements beyond a reasonable doubt: First, that two or more persons conspired, or agreed, to commit the crime of sex trafficking; and Second, that the defendant knowingly and voluntarily joined the conspiracy." *See* Court's Instruction No. 21; Sixth Circuit Pattern Jury Instructions, 2021 Edition, § 16.12; Sixth Circuit Pattern Jury Instructions, 2021 Edition, § 3.01A (modified in accord with § 16.12); Sixth Circuit Pattern Jury Instructions, 2021 Edition, § 3; Sixth Circuit Pattern Jury Instructions, 2021 Edition, § 14.05 (for uniformity on paragraphs (2) through (4), including subparts). There is no other element.

Conspiracies under § 1594(c) do not require an overt act. *See Whitfield v. United States*, 543 U.S. 209, 213-14 (2005) (holding that when Congress omits an explicit reference to an overt act in a conspiracy statute, it dispenses with that requirement), so Instruction 3.01A Conspiracy to Commit an Offense–Basic Elements should be modified to omit paragraph (2)(C). All other references to overt acts should be deleted as well." Sixth Circuit Pattern Jury Instruction 16.12 (Committee Commentary) (2021) (emphasis supplied).

Nor did the government need to prove that a defendant knew that his actions would impact interstate commerce in a substantive sex trafficking charge. *See United States v. Chambers*, 441 F.3d 438, 450 (6th Cir. 2006) ("the government is not required to prove that the defendant knew that channels of interstate commerce would be utilized"); *see also United States v. Feola*, 420 U.S. 671, 676-77 (1975) (the interstate commerce element "need not be in the mind of the actor at the time he perpetrates the act made criminal by the federal statute").

It is well established that in proving a conspiracy "proof of a formal agreement is not necessary; a tacit or material understanding

4

among the parties will suffice." *United States v. Avery*, 128 F.3d 966, 970–71 (6th Cir. 1997). Moreover, the existence of a conspiracy "may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Id.* at 971 (citation omitted). Once the existence of a conspiracy is shown beyond a reasonable doubt, a defendant's connection to the conspiracy "need only be slight." *Id.* A defendant's participation in the conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances. *United States v. Maliszewski,* 161 F.3d 992, 1006 (6th Cir. 1998).

Nero argues that the evidence presented at trial insufficiently established that he knowingly "recruited, enticed, harbored, transported, provided, obtained, or maintained" any of the alleged victims in the case. (ECF. 933, PageID.9870). In truth, the trial testimony proved that Nero was an integral member of the sex and drug trafficking conspiracies and directly involved in trafficking victims at the Victory Inn. For example, AV-1, who purchased drugs from Darrick Bell at the Victory Inn, testified that Nero was complicit in trafficking her—including following her out on Michigan Avenue. When AV-1 was

5

on Michigan Avenue, Nero told her he placed a GPS tracker in her phone. According to Nero, he would know if she did not return to the Victory Inn after she performed a commercial sex act. DPD officer Lenin Amarante testified that he observed Nero with commercial sex workers on Michigan Avenue. Officer Amy Szarafinski testified that she frequently saw Nero at the Victory Inn. This testimony corroborated AV-1's claim that Nero would follow the victims out on Michigan Avenue. Nero's presence served to both intimidate the victims as well as provide protection for them as they engaged in commercial sex work on behalf of the conspiracy.

A.P. testified that Nero ran errands for Bell and Shelvie Avery, co-defendants who trafficked women and sold drugs at the Victory Inn. If A.P. owed a debt to Avery, she could not purchase drugs from Nero and other co-defendants. Further, if A.P. testified that if she tried to purchase drugs instead of paying her drug debt, she would "get your ass beat." Consequently, A.P. would engage in a commercial sex date to pay her drug debt in order to be able to purchase drugs from Bell, Nero, or another co-defendant. A.P's testimony proves Nero was a part of the conspiracy.

6

Nero also contends that the government failed to prove that he knowingly agreed to the sex trafficking conspiracy. But that claim contradicts the trial facts. Victims, co-conspirators, and video evidence all established that Nero was directly involved in and acknowledged his role as enforcer for the sex and drug trafficking conspiracies—evidence which was sufficient to prove that Nero was a knowing and willing member of the conspiracy. Specifically, Nero's co-conspirator J.G. testified that Nero was an enforcer for the conspiracy and that she asked him on at least one occasion to physically assault a woman who was endangering the sex and drug trafficking conspiracy. The government corroborated J.G.'s testimony by playing a video which captures Nero discussing the conspiracy and agreeing to assault the woman. In the same conversation, in the context of Bell and the conspiracy, Nero tells J.G. "of all due respect about what we do here . . . . . When I saw we, I mean this abundance of us . . . ." Nero specifically counts himself as part of the conspiracy.

That evidence by itself extinguishes Nero's Rule 29 insufficiency argument. Again, "the uncorroborated testimony of an accomplice alone may support a conviction." *Wettstain*, 618 F3d. at 583. And Nero's co-

conspirator testimony *was* heavily corroborated with other evidence. The jury could reasonably infer Nero's knowing involvement in the conspiracy because the conversation between Nero and J.G. was expressly about the conspiracy and the threat posed if the victim were to tell others about the conspiracy.

Additional evidence presented at trial strongly established Nero's knowledge and involvement in the sex trafficking conspiracy. In addition to the evidence reference above, additional testimony of Nero's involvement in the sex trafficking conspiracy included:

- Nero acted as an enforcer for the sex and drug trafficking conspiracies.

- Surveillance video captured Nero violently slapping B.B. (a charged victim of the sex trafficking conspiracy) and at least one other unidentified individual, outside of the conspiracy's main drug room at the Victory Inn.[1]

- A.P. testified that Nero assisted co-defendants Bell and Avery. Further, if A.P. owed Avery a drug debt, Nero and other co-

---

[1] The testimony at trial was that Nero assaulted B.B. over an article of clothing. And Special Agent James Hardie testified that an act of violence against one victim has a cascading effect on all other victims.

defendants would know about the debt and refuse to sell her drugs. If she tried to purchase drugs instead of paying off her debt, she would likely get her "ass beat." The evidence established that both Avery and Nero knew that A.P. would have to engage in a commercial sex act to pay off her drug debt.

- A.P. testified that she personally observed Nero assaulting victims in the parking lot of the Victory Inn and on Michigan Avenue.

- Nero sold and fronted drugs to victims of the sex trafficking conspiracy. This was corroborated by B.D. who testified that the women at the Victory Inn were supposed to get their drugs from himself and Nero, among others. For example, there were text messages between Nero's phone and victim A.N.'s cell phone. Those text messages corroborate the testimony that Nero was heavily involved in the sex and drug trafficking conspiracy.

- A large number of text messages detailed communications between Nero and other co-conspirators and victims involved in the sex trafficking conspiracy. The text messages established

Nero's knowledge and involvement in the sex trafficking
conspiracy. For example, Nero warned one victim that he was
always watching her.

- J.G. testified that Nero was a pimp. J.G. saw Nero in rooms
  with naked girls and saw Nero hit a woman. J.G. also testified
  that Nero worked for Bell.

- AV-1 testified that she received "wake-up" drugs from Nero.
  They had an agreement that she would "make the money" and
  bring the money right back to Nero. The term "make the
  money" referred to AV-1 going to Michigan Avenue to engage in
  commercial sex acts to pay for "wake-up" drugs. AV-1 testified
  she knew the drugs Nero provided came from Bell. AV-1 also
  saw Nero repeatedly and violently hit an identified sex
  trafficking victim with a shoe.

- Evidence was presented that established that Nero lived at the
  Victory Inn during the conspiracy. In a video recovered from his
  phone, Nero referred to the Victory Inn as "my land" and noted
  that the upcoming period at the hotel was going to be important
  for him.

10

- The written room receipts established that Nero frequently shared a room with co-defendant Michael Randol who trafficked numerous women. According to a text written by Nero, Randol held on to Nero's money he made at the Victory Inn.

- Room receipts showed Nero in the same room with Bell and one of the women.

- Nero's phone number was a contact in phones belonging to multiple trafficking victims.

- B.D. testified that Bell would have meetings in his room to discuss business related to the drug and sex trafficking conspiracies. Evidence from Nero's phone indicated that on December 16, 2016, Nero texted that he was in "a meeting" and "[c]an't talk now." J.G. corroborated B.D. and testified that the meetings took place in B.D.'s room. J.G. testified that she believed she saw Nero participate in one of Bell's meetings.

- B.D. testified that the women, many of whom were fronted drugs and engaged in commercial sex acts to pay their drug

debt, were supposed to get their drugs from him, co-defendant
Randol, and Nero.

- B.D. testified that when he first arrived at the Victory Inn to
  work for Bell, Bell introduced him to "the crew" which included
  Nero and other co-conspirators. In subsequent testimony, B.D.
  testified that the team of people who sold drugs and trafficked
  women at the Victory Inn included Nero.

- B.D. testified that Nero was involved with trafficking women.

- B.D. testified that Nero would act as an enforcer for Bell. This
  was corroborated with surveillance video showing Nero
  assaulting "Jose" after he robbed members of the conspiracy.

Nero also argues that the government failed to present evidence
that the alleged sex trafficking affected interstate commerce. The
government introduced multiple means and manners in which the
activities of Nero and his co-conspirators affected interstate commerce.
These include:  the Victory Inn serviced out-of-state guests;
advertisements were posted on various internet sites maintained for the
purpose of promoting the sale of victims for commercial sex acts;
members of the conspiracy utilized cell phones to communicate and

12

transact business on behalf of the conspiracy; and the conspiracy distributed controlled substances.

### ***Counts Three and Five***

Counts Three and Five of the Second Superseding Indictment charged Nero with substantive counts of Sex Trafficking under 18 U.S.C. §§ 1594(a)(1) and 2. Trial evidence established that Nero was an aider and abettor. An aider and abettor is punishable as a principal. And with *Pinkerton* liability, Nero is responsible for the acts of other members of the conspiracy.

To prove aiding and abetting, the jury was instructed that "it is not necessary for you to find that he personally committed the crime. You need only find that the defendant or conspirator intentionally helped or encouraged someone else to commit the crime." *See* Court's Instructions No. 25; Sixth Circuit Pattern Jury Instructions, 2021 Edition. The government must only prove that a defendant contributes to the execution of a crime with the intent to aid in its commission. *United States v. Lawson*, 872 F.2d 179, 181 (6th Cir. 1989) (citing *United States v. Stanley*, 765 F.2d 1224, 1242 (5th Cir.1985).

13

Nero is also subject to *Pinkerton* liability. "There are two ways that the government can prove the defendants guilty of this crime. The first is by convincing you that they personally committed or participated in this crime. The second is based on the legal rule that all members of a conspiracy are responsible for acts committed by the other members, as long as those acts are committed to help advance the conspiracy, and are within the reasonably foreseeable scope of the agreement." *See* Court's Instructions No. 27; Sixth Circuit Pattern Jury Instructions, 2021 Edition.

In order to sustain a conviction for sex trafficking under 18 U.S.C. § 1594(a)(1), the government had to prove:  (A) that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained or maintained the "Adult Victim"; (B) that the defendant knew or recklessly disregarded the fact that force, threats of force, or coercion would be used to cause the "Adult Victim" specified in the Count to engage in a commercial sex act(s); and (C) that the offense was in or affected interstate commerce. *See* Sixth Circuit Pattern Jury Instructions, 2021 Edition, § 16.12. The jury failed to reach unanimous verdicts on Counts Three and Five.

14

As identified above, there is significant evidence connecting Nero to Bell's drug and sex trafficking conspiracies both as an aider and abettor and under a theory of *Pinkerton* liability. Multiple witnesses established Nero's involvement with the sex trafficking. Co-conspirators identified Nero as part of the conspiracy. Witnesses identified him as one of Bell's drug dealers, enforcers, and a pimp. His drug dealing and violence were depicted on surveillance footage. Witnesses connected him with co-defendants who were specifically identified as sex traffickers and drug dealers. Witnesses testified Nero sold Bell's drugs and collected Bell's drug debts. Communications connected to sex trafficking and drug dealing were found on his phone and phones associated with co-defendant and victims. He attended at least one meeting with Bell about the conspiracy. J.G. testified Nero worked for Bell. Nero was introduced to B.D. as part of Bell's crew. B.D. specifically testified that Nero had some involvement with trafficking women.

In viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, a rational trier of fact could find Nero was an aider and abettor to Counts

Three and Five. As an enforcer, Nero protected the drugs, the driving force behind the women engaging in commercial sex acts. As an individual who openly engaged in acts of violence against the women, Nero contributed to a climate of fear and violence incentivizing the women to pay their drug debt or suffer the consequences. Both AV-2 (Nero picked up sacks of drugs and dropped off money from her room) and AV-5 (hit in the face by Nero in front of B.D.'s room) interacted with Nero. Both were constantly present at the Victory Inn and known as avid drug users. Nero knew that his involvement with Bell and other co-conspirators were facilitating the sex trafficking of AV-2 and AV-5.

A rational trier of fact could also find that Nero was a member of the conspiracy. Consequently, under *Pinkerton*, he is criminally liable for substantive crimes committed by his co-conspirators, in furtherance of the conspiracy, which were reasonably foreseeable as a necessary or natural consequence of the unlawful agreement. *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946). Witness testimony and other evidence established that Bell operated both a sex and drug trafficking conspiracy at the Victory Inn. Nero's work with co-defendants Randol, J.G., Bell, and B.D., his long-term residency at the Victory Inn, the

16

surveillance videos, and his connection with A.P. and other victims underscore Nero's awareness of the consequences of his actions. The evidence proved that Nero could reasonably foresee that his actions would naturally contribute to the trafficking of both AV-2 and AV-5, and dozens of other victims.

## B.    Drug Trafficking Counts

### *Count Six*

Count Six charged Nero with Conspiracy to Distribute Controlled Substances. For the jury to find Nero guilty of the conspiracy charge, the government need only have proven two elements beyond a reasonable doubt: (A) that two or more persons conspired, or agreed, to distribute a controlled substance; and (B) that the defendant knowingly and voluntarily joined the conspiracy. *See* Sixth Circuit Pattern Jury Instructions, 2021 Edition, § 14.05. The jury failed to reach a unanimous verdict on this count.

Some of the most compelling evidence establishing Nero's knowing and voluntary involvement in the drug trafficking conspiracy concerned the robbery of co-defendant Randol. The government presented video evidence that showed co-defendant Randol robbed at gunpoint on the

17

balcony of the Victory Inn. Moments after the robbery, co-defendant Avery fired a gun at the robber, "Jose." Nero rushed to the scene to assist. The jury watched as Nero, Avery, and Randol violently assaulted Jose, who they presumed to have assisted the robber. Further video evidence showed Nero drag the unconscious Jose and dump his body in a public hallway. Later, the co-conspirators met in the lobby to report the robbery to co-conspirators J.G. and Bell. Later, Nero returns to the unconscious victim and drags him off camera. Finally, Nero and co-conspirator B.D. drag the semi-unconscious Jose out of the hotel and into a waiting vehicle—but not before Nero gets in one last gratuitous punch to the man's head.

The sequence of videos that captured the robbery and subsequent assault are further buttressed by the direct testimony of J.G. and B.D. This evidence sufficiently established that Nero was a knowing and willing participant in the drug trafficking conspiracy. Other surveillance videos and evidence established that Nero sold drugs outside of his room, outside of B.D.'s room, with co-defendant Michael Randol, to women who engaged in commercial sex acts, entered and exited Avery's room where a significant amount of drugs were sold, and

18

guided drug customer's to B.D's room. Finally, text message evidence was introduced detailing Nero discussing the robbery and that his co-conspirator Randol was his bank and that Randol had been "caught slipping"—and that as a result Nero suffered financial loss.

There was substantial additional trial evidence proving Nero's involvement in the drug trafficking:

- Multiple surveillance video clips showed Nero selling drugs at the Victory Inn.

- Testimony that Nero sold Bell's drugs on behalf of the conspiracy.

- Nero's video admissions of his drug dealing following his arrest.

- Testimony that Bell provided drugs to Avery, B.D., Nero, and Randol for sale at the Victory Inn.

- Evidence presented at trial that showed the connection between Nero's cell phone and cell phones of the various members of the drug trafficking conspiracy.

- Text messages between Nero and members of the conspiracy discussing the drug trafficking conspiracy.

- Text messages where Nero was distributing drugs from the Victory Inn.

### ***Count Seven***

Count Seven of the Second Superseding Indictment charged Nero with Maintaining a Drug Premises and Aiding and Abetting in violation of 21 U.S.C. §§ 856(1)(1) and 2. In order to prove that offense, the government must establish; First, the defendant knowingly leased, rented, used, or maintained a place; and Second, that the defendant did so for the purpose of manufacturing, distributing, or using a controlled substance. This crime "does not require that drug distribution be the primary purpose." *See United States v. Russell*, 595 F.3d 633, 642-43 (6th Cir. 2010).

The government presented evidence sufficient to satisfy their burden as to each element of the charge. This includes:

- Nero rented and controlled a large number of rooms at the Victory Inn for the purpose of distributing narcotics and commercial sex trafficking.

- The jury heard this testimony and reviewed dozens of room rental receipts where Nero rented various rooms across the

20

span of several months. Nero rented these rooms with coconspirators in the drug distribution, including Randol, Ford, and Bell.

- Testimony that Nero distributed drugs from the Victory Inn.

- Testimony that Nero, in cooperation with co-conspirators, coordinated the sale and control of rooms at the Victory Inn for the purpose of distributing drugs.

- Video of Nero selling drugs from rooms at the Victory Inn and directing drug customers in and out of drug distribution rooms, including one of the key rooms (203) where B.D. and Avery also sold drugs.

- Video in December 2016 with Nero working with his coconspirators (Avery, Randol, and Daugherty) to protect the drugs distribution from Room 219. Nero's subsequent text messages confirmed that Nero had a large amount of drug proceeds in that room.

- Body camera video of a man overdosing in Nero's room 222—which was corroborated by the corresponding room receipt—in November 2016. Nero was also present at the room, his coat

was in the room, and Nero was with Randol and at least two

victims at that room.

- Text messages where Nero directs drug customers to rooms at

   the Victory Inn, including rooms that he used for distribution.

For all these reasons, Nero fails to establish insufficiency of the

evidence as required under Rule 29.

## IV.   <u>Conclusion</u>

For the foregoing reasons, Nero's motion should be denied.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/Blake S. Hatlem*
BLAKE S. HATLEM
Assistant U.S. Attorney
211 W. Fort, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9613
Email: blake.hatlem@usdoj.gov

Dated: July 12, 2022

Certificate of Service

I certify that on July 12, 2022, I electronically filed this response

for the United States with the Clerk of the United States District Court

for the Eastern District of Michigan using the ECF system, which will

send notification to counsel of record.

/s/ Blake S. Hatlem
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9613
Fax: (313) 226-3265
Email: blake.hatlem@usdoj.gov